HAYNES, Circuit Judge,
concurring and dissenting:
I concur in the entirety of the majority opinion and judgment of the court save and except the second portion of Section II.C., addressing the recovery of attorneys’ fees for time spent prior to the rejection of the settlement offer. I respectfully dissent from the judgment affirming that portion of the district court’s order.
The importance of attorneys’ fees recovery in education-related litigation far exceeds that suggested by the relatively brief discussion presented by the majority opinion and underlying district court order, so I begin by placing the issue in context. Faced with the challenges of raising a child with a disability, parents often depend on public educational authorities for assistance in “ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for” their child. 20 U.S.C. § 1400(c)(1). Congress intended for the IDEA to promote these outcomes, id. § 1400(d) (listing the IDEA’S purposes), and added the attorneys’ fees and related costs provisions now found in 20 U.S.C. § 1415 to increase parents’ participation in and access to the IDEA’S remedial scheme. See Handicapped Children’s Protection Act of 1986, Pub.L. No. 99-372, 100 Stat. 796 (1986) (enacting, inter alia, attorneys’ fees award provision), abrogating Smith v. Robinson, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (holding that, because the IDEA’S predecessor statute lacked an attorneys’ fees provision, such awards could not be obtained by enforcing education-related rights through other civil rights statutes that permitted awards); cf. R. Shep Melnick, Taking Remedies Seriously: Can Courts Control Public Schools?, in From Schoolhouse to Courthouse 40 (Joshua M. Dunn & Martin R. West eds., 2009) (“Schoolhouse”) (observing that the “combination of attorneys’ fees and monetary damages significantly increased incentives for private parties to file suits” under federal civil rights statutes, fostered the development of “a private bar ... to litigate [such] cases,” and “had the effect not just of increasing the number of cases filed but also of augmenting the political support for this enforcement mechanism”).[1]
As many parents unfortunately discover, the quest to procure a free appropriate public education for their child is anything but free, and it certainly is not easy. The *868 IDEA’S complex procedural requirements and opaque, jargon-laden provisions easily could discourage even the most dedicated parents from “going it alone.” Although the IDEA provides parents a right to use attorneys or other specialized individuals in resolving special education disputes, 20 U.S.C. § 1415(h)(1), it is difficult to find— let alone afford — attorneys to take these cases, especially in those areas where such help is most needed. See Lynn M. Dag-gett, Special Education Attorney’s Fees, 8 U.C. Davis J. of Juvenile L. & Pol’y 1, 24-29 (2004) (noting disparity in number of IDEA disputes brought in different states, in urban vs. rural districts, and by socioeconomic status).
Some of the children who qualify for services under the IDEA come from underprivileged families lacking in resources to pursue a complex process. See, e.g., Kelly D. Thomason, Note, The Costs of a “Free” Education, 57 Duke L.J. 457, 483-84 (2007). It nonetheless falls to such families to prove the inadequacy of a school district’s actions and to bear the cost of the experts inevitably required to make such a case. See Arlington Cent. Sch. Dist. v. Murphy, 548 U.S. 291, 293-94, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006) (expert costs); Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 51, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005) (IEP burden). On top of all this, although Congress intended for the IDEA to provide relatively quick resolution to special education disputes,[2] this more than six year-old case exemplifies the tragic reality that such controversies have a tendency to mature more slowly than the children at issue. See, e.g., Jamie S. v. Milwaukee Pub. Schs., 668 F.3d 481, 484 (7th Cir.2012) (ending eleven-year-old dispute over school district’s alleged systemic violations of IDEA’S “child-find” provision by decertifying class).
Against this backdrop, the IDEA comprehensively addresses attorneys’ fees in § 1415(i)(3). First, in subparagraph (B), it states that attorneys’ fees may be awarded “to a prevailing party who is the parent of *869 a child with a disability.” Id. § 1415(i)(3)(B)(i)(I). The district court found, and the majority opinion affirms, that S.H.’s parents fall in this category. I agree.
Next, subparagraph (D) prohibits awarding fees for services performed “subsequent to the time of a written offer of settlement” if certain conditions are met. Id. § 1415(i)(3)(D). I have no quarrel with the majority opinion’s conclusion that the offer here meets the conditions set by the statute: the District made a settlement offer more than ten days prior to the administrative hearing; S.H. did not accept it; and the district court ultimately found that S.H. obtained less favorable relief than that originally offered by the District. Id. § 1415(i)(3)(D)(i).
Subparagraph (E) then sets out an exception to this prohibition for a prevailing-party parent “who was substantially justified in rejecting [a] settlement offer.” Id. § 1415(i)(3)(E). The district court and the majority opinion correctly reject S.H.’s two arguments for “substantial justification”— that the District had to renew its offer after the lawsuit was filed and that the award from the administrative hearing officer was greater than the settlement offer.[3]
No one disputes, however, that subpara-graphs (D) and (E) apply only to “services performed subsequent to the time of a written offer of settlement.” Id. § 1415(i)(3)(D)(i) (emphasis added). Thus, fees for services performed prior to the time of the offer in question — i.e., before September 13, 2007 — are not excluded by subparagraph (D)’s prohibition. As a result, S.H. need not show that he was “substantially justified in rejecting” the District’s settlement offer in order to recover pre-offer fees.[4]
Instead, a separate subparagraph— (F) — addresses the possibility of reducing pre-offer fees: “Except as provided in sub-paragraph (G), whenever the court finds that ... the parent, or the parent’s attorneys, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy ... the court shall reduce, accordingly, the amount of the attorneys’ fees awarded under this section.” Id. § 1415(i)(3)(F)(i). This provision says nothing about a written settlement offer or substantial justification. Nor does it address the complete disallowance of attorneys’ fees. It provides only for an appropriate reduction of attorneys’ fees based upon, among other things, unreasonable protraction. Id. § 1415(i)(3)(F).
*870 The district court and the majority opinion, however, do not distinguish between these separate provisions. The entirety of the district court opinion addressing pre-offer fees is as follows:
With respect to attorneys’ fees for work performed prior to the resolution meeting, the “IDEA states that a court shall reduce fees ‘whenever the court finds that the parent or the parent’s attorney ... unreasonably protracted the final resolution of the controversy,’ ” [El Paso Indep. Sch. Dist. v. Richard R., 591 F.3d 417, 429 (5th Cir.2009) (quoting 20 U.S.C. § 1415(i)(3)(F)(i)) ]. The court, then, must determine whether the Plaintiffs’ rejection of the Defendant’s settlement offer unreasonably protracted the final resolution of the controversy such that a further reduction in the fee award is warranted. See id. The court notes that the parties did not address this issue. The court, therefore, is left to speculate as to why the Plaintiff rejected the Defendant’s settlement offer. The court declines to do so and finds that the Plaintiffs’ rejection of the Defendant’s settlement offer unreasonably protracted the final resolution of the controversy. Based on the foregoing, [recovery of Plaintiffs’ pre-offer fees] is hereby DENIED.
S.H. ex rel. A.H. v. Plano Indep. Sch. Dist., No. 4:08-CV-96, 2011 WL 1193091, at *3, 2011 U.S. Dist. LEXIS 32260, at *10-11 (E.D.Tex. Mar. 28, 2011) (emphasis added). With little analysis, the majority opinion affirms this conclusion.
The district court’s analysis, however, conflates the post-offer-fees bar in subpar-agraph (D) and its “substantially-justified” exception in subparagraph (E) with the separate “unreasonable-protraction” provision in subparagraph (F), which makes no reference to settlement or substantial justification. If Congress intended to incorporate those requirements into the unreasonable-protraction inquiry, it could have done so. As a matter of statutory construction, we must assume that Congress intended different standards to apply to the fee-reduction provisions in subpara-graph (F) than the fee-bar provisions in subparagraphs (D) and (E). “ ‘[WJhere Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.’ ” Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir.1972)).
Yet, the district court failed to separate these two distinct analyses. The district court cited Richard R. in support of the conclusion that “unreasonable rejection” of a settlement offer equals “unreasonable protraction.” In Richard R., however, the school district offered everything the parents asked for plus attorneys’ fees.[5] Richard R., 591 F.3d at 420-21. There was simply nothing to litigate after the offer, yet Richard R’s attorney rejected the offer based on an untenable position that the attorney previously had acknowledged as invalid. Id. at 428 & n. 12.
No one suggests that this case is anything like Richard R. The parents and the *871 District had legitimate disputes over how best to provide S.H. with a free appropriate public education and to construct an IEP tailored to that end. The hearing officer and the district court agreed that 5.H. deserved relief in the form of reimbursement for private instruction. That the district court ultimately awarded slightly less than the settlement offer does not render S.H.’s parents unreasonable in their pursuit of more relief for their severely autistic son.
For its part, the majority opinion states: “However, ‘[t]his court and a number of other courts have held that failing to settle can constitute protraction.’” (quoting Jason D.W. ex rel. Douglas W. v. Houston Indep. Sch. Dish, 158 F.3d 205, 211 (5th Cir.1998); citing Shelly C. ex rel. Shelbie C. v. Venus Indep. Sch. Dist., 878 F.2d 862, 868 (5th Cir.1989)).[6] Jason D.W. made that point with little analysis and ultimately found the parents’ position inadequately briefed. Shelly C. concluded that fact issues existed as to the reasonableness of fees and the unreasonableness of protraction without discussing what allegedly constituted protraction. See 878 F.2d at 864. Neither case held — as the district court did here — that simply rejecting a settlement offer for less relief than ultimately obtained is tantamount to unreasonable protraction.[7]
Certainly, rejecting a reasonable settlement offer is one factor that can be considered in analyzing unreasonable protraction. But — other than in a Richard 72.-like situation where the school district offers everything asked for and then some — it is not the sole factor. See, e.g., Ector Cnty. Indep. Sch. Dist. v. VB, 420 Fed.Appx. 838, 347-48 (5th Cir.2011) (unpublished) (discussing factors to consider in determining “unreasonable protraction,” including the parents’ good faith, and affirming award of attorneys’ fees); see also Jordan S. v. Bd. of Educ., No. 11-C-8362, 2012 WL 2503961, at *2-4, 2012 U.S. Dist. LEXIS 89259, at *7-9 (N.D.Ill. Jun. 28, 2012) (analyzing parents’ overall conduct in the litigation in determining “unreasonable protraction”); Corpus Christi Indep. Sch. Dist. v. D.H., No. C-11-167, 2012 WL 2064715, at *7, 2012 U.S. Dist. LEXIS 79214, at *19-20 (S.D.Tex. Jun. 7, 2012) (applying nuanced analysis to “unreasonable protraction” question). Instead, the district court should analyze unreasonable protraction in the context of the overall conduct of the litigation, including the parents’ good faith, the reasonableness of the legal position taken and arguments made, participation in efforts to resolve the litigation, the issues prevailed upon, and the type and amount of relief ultimately obtained.[8] No such analysis was conducted here.
I have two other concerns with the district court’s handling of this issue: the placement of the burden of proof and the *872 complete denial — rather than reduction— of pre-offer fees. First, although § 1415(i) does not expressly state a burden of proof, “ ‘[p]erhaps the broadest and most accepted idea is that the person who seeks court action should justify the request....’” Schaffer, 546 U.S. at 56, 126 S.Ct. 528 (citation omitted). Accordingly, the party with the burden of proof under subpara-graph (F) should be the party claiming that an attorneys’ fees award should be reduced because of another party’s engaging in “unreasonable protraction.” Here, that is the District.
Although we have not specifically addressed the burden of proof in this context, the analysis above dovetails with the extant law in this area. Courts calculate attorneys’ fees awards under the IDEA using the “lodestar” method. See, e.g., Gary G. v. El Paso Indep. Sch. Dist., 632 F.3d 201, 205 (5th Cir.2011); Damian J. v. Sch. Dist of Phila., 358 Fed.Appx. 333, 335-37 (3d Cir.2009) (unpublished). The lodestar amount is presumptively reasonable, but may be further adjusted using this circuit’s twelve well-known Johnson factors. See, e.g., Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 800 & n. 18 (5th Cir.2006) (citing Johnson v. Ga. Hwy. Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974)); see also Holmes v. Millcreek Twp. Sch. Dist., 205 F.3d 583, 595-96 (3d Cir.2000) (applying some Johnson factors to reduce attorneys’ fee award in IDEA case, without citing Johnson). Under the lodestar approach, the burden of proving that the properly calculated lodestar amount should be reduced falls to the party opposing the fee award. See, e.g., Robinson v. City of Harvey, 489 F.3d 864, 872 (7th Cir.2007) (citation omitted). Since the effect of the District’s argument is to reduce — indeed, eliminate — the attorneys’ fees here, it has the burden to prove “unreasonable protraction.”
The district court implicitly concluded that no evidence was presented on unreasonable protraction and, indeed, found that no one had raised this issue at all. S.H., 2011 WL 1193091, at *3-4, 2011 U.S. Dist. LEXIS 32260, at *10—11.[9] Where there is a vacuum of evidence and argument on a specific issue, the party with the burden to *873 prove the issue at trial loses. See, e.g., Mo. Pac. R.R. Co. v. Harbison-Fischer Mfg. Co., 26 F.3d 531, 536 (5th Cir.1994); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, rather than ruling against S.H., the district court either should not have addressed subparagraph (F) or should have concluded that the District failed to offer evidence sufficient to prove unreasonable protraction. The absence of evidence and argument below meant that the District should have lost on this point, not won.
This leads me to the final point with which I part ways with the majority opinion — the complete denial of fees. Where it applies, subparagraph (F) operates to reduce fees “accordingly.” 20 U.S.C. § 1415(i)(3)(F). Neither the district court nor the majority opinion explains why the prevailing-party parents here deserve a fee award of zero. Given the allocation of the burden of proof and the IDEA’S text, I disagree with barring the recovery of any fees — even had S.H. unreasonably protracted these proceedings — without analyzing whether that result is the appropriate reduction.[10]
However inadvertently, the attorneys’ fee ruling here only further steepens an already-uphill climb parents face in this area by turning every settlement offer into a game of high-stakes poker between school districts and the parents of special-needs children.[11] See Thomason, supra, at 484-85 (discussing the rarity of IDEA due process hearings and the minute amount of special education funds (0.3%) actually spent on IDEA disputes).[12] In addition to cash, experts, and perseverance, parents with legitimate arguments for more benefits for their special-needs child apparently must also arm themselves with a crystal ball accurate within mere percentage points of what a “final” adjudicator might actually award.[13] If they are wrong, either the lawyer does not get paid or the par *874 ents get saddled with a bill they likely cannot afford — providing disincentives for lawyers to take these types of cases and for parents to exercise their IDEA-given right to disagree with the school district’s provision of services in the future.[14] Cf. Angela L. v. Pasadena Indep. Sch. Dist., 918 F.2d 1188, 1192 (5th Cir.1990) (observing that the failure of the IDEA’S predecessor to provide for attorneys’ fees awards made it “difficult” for the “[p]ar-ents of handicapped children, often already burdened by the prohibitive costs of medical care and equipment,” to “pursue expensive litigation against school districts”); Daggett, supra, at 24 (noting disparate rates of success achieved by parents who obtained counsel and those who did not).
The IDEA itself does not require this outcome — quite the opposite. Cf. Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 533, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007) (“[W]e find nothing in the [IDEA] to indicate that when Congress required States to provide adequate instruction to a child ‘at no cost to parents,’ it intended that only some parents would be able to enforce that mandate.”). “The statute instead takes pains to ‘ensure that the rights of children with disabilities and parents of such children are protected.’” Id. (quoting 20 U.S.C. § 1400(d)(1)(B)). The result here, however, frustrates that goal. Accordingly, I would vacate the portion of the district court’s order denying pre-offer fees and remand for an award of those fees under the lodestar method. From the majority opinion’s failure to do so, I respectfully dissent.

. Congress enacted the Handicapped Children's Protection Act explicitly in response to the Supreme Court’s ruling in Smith v. Robinson. See, e.g., Bd. of Educ. v. Diamond ex rel. Diamond, 808 F.2d 987, 993-94 (3d Cir.1987) (discussing attorneys’ fees amendment); Handicapped Childrens Protection Act of 1985: Hearing on S. 415 Before the Subcomm. on the Handicapped of the S. Comm, on Labor and Human Res., 99th Cong. 1 (1985) (opening statement of Sen. Weicker) ("Today we are accepting [the Supreme Court’s] invitation to revisit the matter[s] [at issue in Smith ].’’).

. See Schaffer, 546 U.S. at 58-59, 126 S.Ct. 528 (discussing various IDEA provisions intended to make the resolution of special education disputes cost-effective and expeditious, such as mediation and pre-hearing "resolution sessions”); El Paso Indep. Sch. Dist. v. Richard R„ 591 F.3d 417, 426 (5th Cir.2009) ("Early resolution through settlement is favored under the IDEA.”).
Parents that resolve their disputes outside of administrative and judicial channels pursuant to these policy preferences, however, may not be able to recover attorneys’ fees. This circuit recently joined several others in extending to the IDEA context the Supreme Court’s limitation of "prevailing party” status to those who "obtainf] a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief.” Richard R., 591 F.3d at 422 (citing Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep’t of Health and Human Res., 532 U.S. 598, 603-04, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), superseded by statute on other grounds, OPEN Government Act of 2007, Pub.L. No. 110-175, § 4(a), 121 Stat. 2524 (Freedom of Information Act context)); see also id. at 422 nn. 3-4 (collecting cases and noting that "[a]n administrative hearing officer's order provides the requisite judicial imprimatur’ ” to support prevailing party status). At least one circuit has extended Buckhannon to preclude an IDEA plaintiff from recovering attorneys' fees after resolving her dispute via private settlement. See Smith v. Fitchburg Pub. Schs., 401 F.3d 16, 27 (1st Cir.2005).
Even if a private settlement provides for attorneys’ fees, moreover, it may not be judicially enforceable. See 20 U.S.C. § 1415(f)(l)(B)(iii) (limiting judicially-enforceable settlements under the IDEA to settlements reached at a "resolution session”); cf. Christina A. ex rel. Jennifer A. v. Bloomberg, 315 F.3d 990, 992-93 (8th Cir.2003) (holding that district court’s approval of settlement, although required by the relevant statute, did not confer "prevailing party” status because the court did not "establish the terms of the agreement”; the district court's approval therefore did not constitute "judicial imprimatur” on the same level as a consent decree or judgment, as required by Buckhannon).

. The fact that a hearing officer awards greater relief does not alone suffice to show substantial justification. When substantial justification is at issue, a parent must give an explanation for why the settlement offer did not provide the relief she believed was necessary to provide her child a free appropriate public education. It may be, for example, that the offer failed to include certain compensatory services or reimbursement for private instruction during a time period when the educational agency denied the child a free appropriate public education.
The arguments made in the administrative proceeding that led to a higher award may also show that a parent was “substantially justified” in rejecting a settlement offer. A parent generally should not be penalized, for example, for making a good faith argument urging a novel application of an unclear point of law that could result in the parent’s obtaining of greater relief than that offered via settlement. In such a situation, even if the parent ultimately lost on that uncertain point, he may still have been substantially justified in making the argument and pursuing greater relief. I ultimately side with the majority opinion on this issue because S.H. failed to provide any such explanation or analyses.

. I use the term "pre-offer fees” to refer to attorneys’ fees incurred for time spent prior to the time of the written offer that the District presented here and that we have found meets the standard for such offers.

. We previously declined to find unreasonable protraction in a case where both parties took steps that delayed resolution of the dispute and where the plaintiff rejected a settlement offer that would have provided almost triple the amount of relief ultimately obtained, but no attorneys’ fees. See Gary G. v. El Paso Indep. Sch. Dist., 632 F.3d 201, 210-11 (5th Cir.2011). The majority opinion determines that S.H. waived this argument by failing to raise it in the district court. As more fully discussed below, however, neither side raised protraction in the district court, and, in any event, the burden of proving protraction fell to the District. Thus, I disagree that this argument is waived.

. The majority opinion also cites to Richard R., which was discussed above.

. The primary debate in Jason D.W. was over whether "unreasonable protraction” refers only to the administrative proceeding or also to the litigation over attorneys’ fees.

. See also J.T. ex rel. A.T. v. Medford Bd. of Educ., 118 Fed.Appx. 605, 606-07 (3d Cir.2004) (unpublished) (affirming unreasonable-protraction finding in light of parents’ and parents' attorney’s consistent failure to provide requested documents, refusal to cooperatively work with school district, and unilateral termination of key IEP meeting); Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1030-31 (8th Cir.2003) (declining to find unreasonable protraction where district court had already limited attorneys' fee award; the relief offered via settlement differed from that ultimately obtained; and the school district never offered to settle the specific issue on which the plaintiff prevailed); Holmes v. Millcreek Twp. Sch. Dist., 205 F.3d 583, 594 (3d Cir.2000) (concluding that fee award was excessive because parents were no longer prevailing parties on certain issues and two separate state administrative authorities had found *872 that the parents and their attorney " 'contributed to’ the needlessly 'protracted proceedings’ ”); Phelan v. Bell, 8 F.3d 369, 375 n. 6 (6th Cir.1993) (holding that plaintiff did not unreasonably protract proceedings by rejecting a proposed IEP that was later uséd as the basis for final relief; "merely pursuing the proceedings to a final decision did not unreasonably protract the[] proceedings”); Johnson v. Bismarck Pub. Sch. Dist., 949 F.2d 1000, 1004 (8th Cir.1991) (affirming unreasonable protraction finding in case where plaintiffs attorney failed to attend meetings with school district officials and filed suit without making any "attempt[s] at informal negotiation” or "even telling District officials what relief he thought [the plaintiff] deserved”).

. The majority opinion cites to a statement in the District's response to the motion for attorney’s fees that mentions "protraction” and stated that any award would be "completely unreasonable.” However, the district court concluded that neither party raised the issue of unreasonable protraction. That is probably because the District's passing reference to "protraction” was in the context of arguing that S.H. was not a “prevailing party,” a point on which the District lost. The District never argued that S.H. unreasonably protracted and did not cite to subparagraph (F)(i). Instead, in a separate section from which the "completely unreasonable” quote comes, it cited to subparagraph (F)(iit), a separate provision dealing with "excessive” time spent "considering the nature of the action” (to which S.H. did respond) which would not have alerted S.H. or the court to a claim of unreasonable protraction under (F)(i).
That lack of discussion and citation is in stark contrast to the District’s lengthy discussion of the effect of a settlement offer on post-offer fees and citation to the correct provision. The district court rightly could expect the plaintiff to provide any "substantial justification” in response to this attack on post- *873 offer fees. However, as to pre-offer fees and unreasonable protraction, the district court correctly concluded that “the parties did not address this issue.” For exactly that reason (among others), the district court improperly reached the question of "unreasonable protraction.”

. Neither party briefed the portion of sub-paragraph (F)’s exception that provides that the fee-reduction provision "shall not apply” if "there was a violation of [§ 1415].” 20 U.S.C. § 1415(f)(3)(G). This exception seems to apply given our conclusion that the District violated § 1415. I agree, however, with the majority opinion's implicit conclusion that this argument is forfeited. S.H. briefly argued for a different (and here inapplicable) exception under subparagraph (G) that applies if a school district unreasonably protracts proceedings.

. School districts, of course, come to the table with public funds and "in-house” experts. See, e.g., Murphy, 548 U.S. at 314, 126 S.Ct. 2455 (Breyer, J., dissenting) ("The costs of experts may not make much of a dent in a school district’s budget, as many of the experts they use in IDEA proceedings are already on the staff.” (citing Oberti v. Bd. of Educ., 995 F.2d 1204, 1219 (3d Cir.1993))). They may also recover attorneys' fees from parents and their attorneys in certain situations. See 20 U.S.C. § 1415(i)(3)(B)(i)(II)-(III).

. See also Samuel R. Bagenstos, The Judiciary's Now-Limited Role in Special Education, in Schoolhouse at 129 (noting that three of the largest school districts in the nation, including San Antonio ISD, "were not required to pay any plaintiffs’ attorneys’ fees in IDEA cases during [the 1999-2001 school years]”).

. The difference between the settlement offer amount and the amount ultimately awarded is only $875, which equates to 13.5 hours of private instruction at the Wayman Learning Center. In other words, S.H. eventually obtained almost 95% of what the settlement offer would have provided. Had he received a dollar more than the settlement offer, the fee-bar at § 1415(i)(3)(D) would not even be in play.

. This outcome falls perhaps most heavily on those parents who are not wealthy enough to pay for their child’s special education needs themselves but also not financially poor enough to qualify for pro bono legal services. See Thomason, supra, at 484.