Justice Alito
delivered the opinion of the Court.
The Individuals with Disabilities Education Act (IDEA or Act) provides that a court “may award reasonable attorneys’ fees as part of the costs” to parents who prevail in an action brought under the Act. Ill Stat. 92, 20 U. S. C. § 1415(i)(3)(B). We granted certiorari to decide whether this fee-shifting provision authorizes prevailing parents to *294 recover fees for services rendered by experts in IDEA actions. We hold that it does not.
I
Respondents Pearl and Theodore Murphy filed an action under the IDEA on behalf of their son, Joseph Murphy, seeking to require petitioner Arlington Central School District Board of Education to pay for their son’s private school tuition for specified school years. Respondents prevailed in the District Court, 86 F. Supp. 2d 354 (SDNY 2000), and the Court of Appeals for the Second Circuit affirmed, 297 F. 3d 195 (2002).
As prevailing parents, respondents then sought $29,350 in fees for the services of an educational consultant, Marilyn Arons, who assisted respondents throughout the IDEA proceedings. The District Court granted respondents’ request in part. It held that only the value of Arons’ time spent between the hearing request and the ruling in respondents’ favor could properly be considered charges incurred in an “action or proceeding brought” under the Act, see 20 U. S. C. § 1415(i)(3)(B). 2003 WL 21694398, *9 (SDNY, July 22, 2003). This reduced the maximum recovery to $8,650. The District Court also held that Arons, a nonlawyer, could be compensated only for time spent on expert consulting services, not for time spent on legal representation, id., at *4, but it concluded that all the relevant time could be characterized as falling within the compensable category, and thus allowed compensation for the full $8,650, id., at *10.
The Court of Appeals for the Second Circuit affirmed. 402 F. 3d 332 (2005). Acknowledging that other Circuits had taken the opposite view, the Court of Appeals for the Second Circuit held that “Congress intended to and did authorize the reimbursement of expert fees in IDEA actions.” Id., at 336. The court began by discussing two decisions of this Court holding that expert fees could not be recovered as taxed costs under particular cost- or fee-shifting provisions. *295 See Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U. S. 437 (1987) (interpreting Fed. Rule Civ. Proc. 54(d) and 28 U. S. C. §1920); West Virginia Univ. Hospitals, Inc. v. Casey, 499 U. S. 83 (1991) (interpreting 42 U. S. C. § 1988 (1988 ed.)). According to these decisions, the court noted, a cost- or fee-shifting provision will not be read to permit a prevailing party to recover expert fees without “ ‘explicit statutory authority’ indicating that Congress intended for that sort of fee-shifting.” 402 F. 3d, at 336.
Ultimately, though, the court was persuaded by a statement in the Conference Committee Report relating to 20 U. S. C. § 1415(i)(3)(B) and by a footnote in Casey that made reference to that Report. 402 F. 3d, at 336-337 (citing H. R. Conf. Rep. No. 99-687, p. 5 (1986)). Based on these authorities, the court concluded that it was required to interpret the IDEA to authorize the award of the costs that prevailing parents incur in hiring experts. 402 F. 3d, at 336.
We granted certiorari, 546 U. S. 1085 (2006), to resolve the conflict among the Circuits with respect to whether Congress authorized the compensation of expert fees to prevailing parents in IDEA actions. Compare Goldring v. District of Columbia, 416 F. 3d 70, 73-77 (CADC 2005); Neosho R-V School Dist. v. Clark ex rel. Clark, 315 F. 3d 1022, 1031-1033 (CA8 2003); T. D. v. LaGrange School Dist. No. 102, 349 F. 3d 469, 480-482 (CA7 2003), with 402 F. 3d 332 (CA2 2005). We now reverse.
II
Our resolution of the question presented in this case is guided by the fact that Congress enacted the IDEA pursuant to the Spending Clause. U. S. Const., Art. I, § 8, cl. 1; see Schaffer v. Weast, 546 U. S. 49 (2005). Like its statutory predecessor, the IDEA provides federal funds to assist state and local agencies in educating children with disabilities “and conditions such funding upon a State’s compliance with extensive goals and procedures.” Board of Ed. of Hendrick *296 Hudson Central School Dist., Westchester Cty. v. Rowley, 458 U. S. 176, 179 (1982).
Congress has broad power to set the terms on which it disburses federal money to the States, see, e. g., South Dakota v. Dole, 488 U. S. 203, 206-207 (1987), but when Congress attaches conditions to a State’s acceptance of federal funds, the conditions must be set out “unambiguously,” see Pennhurst State School and Hospital v. Halderman, 451 U. S. 1, 17 (1981); Rowley, supra, at 204, n. 26. “[LJegislation enacted pursuant to the spending power is much in the nature of a contract,” and therefore, to be bound by “federally imposed conditions,” recipients of federal funds must accept them “voluntarily and knowingly.” Pennhurst, 451 U. S., at 17. States cannot knowingly accept conditions of which they are “unaware” or which they are “unable to ascertain.” Ibid. Thus, in the present case, we must view the IDEA from the perspective of a state official who is engaged in the process of deciding whether the State should accept IDEA funds and the obligations that go with those funds. We must ask whether such a state official would clearly understand that one of the obligations of the Act is the obligation to compensate prevailing parents for expert fees. In other words, we must ask whether the IDEA furnishes clear notice regarding the liability at issue in this case.
Ill
A
In considering whether the IDEA provides clear notice, we begin with the text. We have “stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.” Connecticut Nat. Bank v. Germain, 503 U. S. 249, 253-254 (1992). When the statutory “language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.” Hartford Underwriters Ins. Co. v. Union *297 Planters Bank, N. A., 530 U. S. 1, 6 (2000) (quoting United States v. Ron Pair Enterprises, Inc., 489 U. S. 235, 241 (1989), in turn quoting Caminetti v. United States, 242 U. S. 470, 485 (1917); internal quotation marks omitted).
The governing provision of the IDEA, 20 U. S. C. § 1415(i)(3)(B), provides that “[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys’ fees as part of the costs” to the parents of “a child with a disability” who is the “prevailing party.” While this provision provides for an award of “reasonable attorneys’ fees,” this provision does not even hint that acceptance of IDEA funds makes a State responsible for reimbursing prevailing parents for services rendered by experts.
Respondents contend that we should interpret the term “costs” in accordance with its meaning in ordinary usage and that § 1415(i)(3)(B) should therefore be read to “authorize reimbursement of all costs parents incur in IDEA proceedings, including expert costs.” Brief for Respondents 17.
This argument has multiple flaws. For one thing, as the Court of Appeals in this case acknowledged, “‘costs’ is a term of art that generally does not include expert fees.” 402 F. 3d, at 336. The use of this term of art, rather than a term such as “expenses,” strongly suggests that § 1415(i)(3)(B) was not meant to be an open-ended provision that makes participating States liable for all expenses incurred by prevailing parents in connection with an IDEA case—for example, travel and lodging expenses or lost wages due to time taken off from work. Moreover, contrary to respondents’ suggestion, § 1415(i)(3)(B) does not say that a court may award “costs” to prevailing parents; rather, it says that a court may award reasonable attorney’s fees “as part of the costs” to prevailing parents. This language simply adds reasonable attorney’s fees incurred by prevailing parents to the list of costs that prevailing parents are otherwise entitled to recover. This list of otherwise recoverable costs *298 is obviously the list set out in 28 U. S. C. § 1920, the general statute governing the taxation of costs in federal court, and the recovery of witness fees under § 1920 is strictly limited by § 1821, which authorizes travel reimbursement and a $40 per diem. Thus, the text of 20 U. S. C. § 1415(i)(3)(B) does not authorize an award of any additional expert fees, and it certainly fails to provide the clear notice that is required under the Spending Clause.
Other provisions of the IDEA point strongly in the same direction. While authorizing the award of reasonable attorney’s fees, the Act contains detailed provisions that are designed to ensure that such awards are indeed reasonable. See §§ 1415(i)(3)(C)-(G). The absence of any comparable provisions relating to expert fees strongly suggests that recovery of expert fees is not authorized. Moreover, the lack of any reference to expert fees in § 1415(d)(2) gives rise to a similar inference. This provision, which generally requires that parents receive “a full explanation of the procedural safeguards” available under §1415 and refers expressly to “attorneys’ fees,” makes no mention of expert fees.
B
Respondents contend that their interpretation of § 1415(i) (3)(B) is supported by a provision of the Handicapped Children’s Protection Act of 1986 that required the General Accounting Office (GAO) to collect certain data, § 4(b)(3), 100 Stat. 797 (hereinafter GAO study provision), but this provision is of little significance for present purposes. The GAO study provision directed the Comptroller General, acting through the GAO, to compile data on, among other things: “(A) the specific amount of attorneys’ fees, costs, and expenses awarded to the prevailing party” in IDEA cases for a particular period of time, and (B) “the number of hours spent by personnel, including attorneys and consultants, involved in the action or proceeding, and expenses incurred *299 by the parents and the State educational agency and local educational agency.” Id., at 797-798.
Subparagraph (A) would provide some support for respondents’ position if it directed the GAO to compile data on awards to prevailing parties of the expense of hiring consultants, but that is not what subparagraph (A) says. Subparagraph (A) makes no mention of consultants or experts or their fees.[1]
Subparagraph (B) similarly does not help respondents. Subparagraph (B), which directs the GAO to study “the number of hours spent [in IDEA cases] by personnel, including . . . consultants,” says nothing about the award of fees to such consultants. Just because Congress directed the GAO to compile statistics on the hours spent by consultants in IDEA cases, it does not follow that Congress meant for States to compensate prevailing parties for the fees billed by these consultants.
Respondents maintain that “Congress’ direction to the GAO would be inexplicable if Congress did not anticipate that the expenses for ‘consultants’ would be recoverable,” *300 Brief for Respondents 19, but this is incorrect. There are many reasons why Congress might have wanted the GAO to gather data on expenses that were not to be taxed as costs. Knowing the costs incurred by IDEA litigants might be useful in considering future procedural amendments (which might affect these costs) or a future amendment regarding fee shifting. And, in fact, it is apparent that the GAO study provision covered expenses that could not be taxed as costs. For example, the GAO was instructed to compile statistics on the hours spent by all attorneys involved in an IDEA action or proceeding, even though the Act did not provide for the recovery of attorney’s fees by a prevailing state or local educational agency.[2] Similarly, the GAO was directed to compile data on “expenses incurred by the parents,” not just those parents who prevail and are thus eligible to recover taxed costs.
In sum, the terms of the IDEA overwhelmingly support the conclusion that prevailing parents may not recover the costs of experts or consultants. Certainly the terms of the IDEA fail to provide the clear notice that would be needed to attach such a condition to a State’s receipt of IDEA funds.
IV
Thus far, we have considered only the text of the IDEA, but perhaps the strongest support for our interpretation of the IDEA is supplied by our decisions and reasoning in Crawford Fitting, 482 U. S. 437, and Casey, 499 U. S. 83. In light of those decisions, we do not see how it can be said *301 that the IDEA gives a State unambiguous notice regarding liability for expert fees.
In Crawford Fitting, the Court rejected an argument very similar to respondents’ argument that the term “costs” in § 1415(i)(3)(B) should be construed as an open-ended reference to prevailing parents’ expenses. It was argued in Crawford Fitting that Federal Rule of Civil Procedure 54(d), which provides for the award of “costs” to a prevailing party, authorizes the award of costs not listed in 28 U. S. C. § 1821. 482 U. S., at 439. The Court held, however, that Rule 54(d) does not give a district judge “discretion to tax whatever costs may seem appropriate”; rather, the term “costs” in Rule 54(d) is defined by the list set out in § 1920. Id., at 441. Because the recovery of witness fees, see § 1920(3), is strictly limited by § 1821, the Court observed, a broader interpretation of Rule 54(d) would mean that the Rule implicitly effected a partial repeal of those provisions. Id., at 442. But, the Court warned, “[w]e will not lightly infer that Congress has repealed §§ 1920 and 1821, either through Rule 54(d) or any other provision not referring explicitly to witness fees.” Id., at 445.
The reasoning of Crawford Fitting strongly supports the conclusion that the term “costs” in 20 U. S. C. § 1415(i)(3)(B), like the same term in Rule 54(d), is defined by the categories of expenses enumerated in 28 U. S. C. § 1920. This conclusion is buttressed by the principle, recognized in Crawford Fitting, that no statute will be construed as authorizing the taxation of witness fees as costs unless the statute “refer[s] explicitly to witness fees.” 482 U. S., at 445; see also ibid. (“[Ajbsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant’s witness as costs, federal courts are bound by the limitations set out in 28 U.S. C. §1821 and §1920”).
Our decision in Casey confirms even more dramatically that the IDEA does not authorize an award of expert fees. In Casey, as noted above, we interpreted a fee-shifting pro *302 vision, 42 U. S. C. § 1988, the relevant wording of which was virtually identical to the wording of 20 U. S. C. § 1415(i)(3)(B). Compare ibid, (authorizing the award of “reasonable attorneys’ fees as part of the costs” to prevailing parents) with 42 U. S. C. § 1988 (1988 ed.) (permitting prevailing parties in certain civil rights actions to be awarded “a reasonable attorney’s fee as part of the costs”). We held that § 1988 did not empower a district court to award expert fees to a prevailing party. Casey, supra, at 102. To decide in favor of respondents here, we would have to interpret the virtually identical language in 20 U. S. C. § 1415 as having exactly the opposite meaning. Indeed, we would have to go further and hold that the relevant language in the IDEA unambiguously means exactly the opposite of what the nearly identical language in 42 U. S. C. § 1988 was held to mean in Casey.
The Court of Appeals, as noted above, was heavily influenced by a Casey footnote, see 402 F. 3d, at 336-337 (quoting 499 U. S., at 91-92, n. 5), but the court misunderstood the footnote’s meaning. The text accompanying the footnote argued, based on an analysis of several fee-shifting statutes, that the term “attorney’s fees” does not include expert fees. Id., at 88-91. In the footnote, we commented on petitioners’ invocation of the Conference Committee Report relating to 20 U. S. C. § 1415(i)(3)(B), which stated: “ ‘The conferees intendfed] that the term “attorneys’ fees as part of the costs” include reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the . . . case.’” 499 U. S., at 91-92, n. 5 (quoting H. R. Conf. Rep. No. 99-687, at 5; ellipsis in original). This statement, the footnote commented, was “an apparent effort to depart from ordinary meaning and to define a term of art.” 499 U. S., at 92, n. 5. The footnote did not state that the Conference Committee Report set out the correct interpretation of § 1415(i)(3)(B), much less that the Report was sufficient, despite the lan *303 guage of the statute, to provide the clear notice required under the Spending Clause. The thrust of the footnote was simply that the term “attorneys’ fees,” standing alone, is generally not understood as encompassing expert fees. Thus, Crawford Fitting and Casey strongly reinforce the conclusion that the IDEA does not unambiguously authorize prevailing parents to recover expert fees.
V
Respondents make several arguments that are not based on the text of the IDEA, but these arguments do not show that the IDEA provides clear notice regarding the award of expert fees.
Respondents argue that their interpretation of the IDEA furthers the Act’s overarching goal of “ensur[ing] that all children with disabilities have available to them a free appropriate public education,” 20 U. S. C. § 1400(d)(1)(A), as well as the goal of “safeguard[ing] the rights of parents to challenge school decisions that adversely affect their child.” Brief for Respondents 20. These goals, however, are too general to provide much support for respondents’ reading of the terms of the IDEA. The IDEA obviously does not seek to promote these goals at the expense of all other considerations, including fiscal considerations. Because the IDEA is not intended in all instances to further the broad goals identified by respondents at the expense of fiscal considerations, the goals cited by respondents do little to bolster their argument on the narrow question presented here.[3]
*304 Finally, respondents vigorously argue that Congress clearly intended for prevailing parents to be compensated for expert fees. They rely on the legislative history of § 1415 and in particular on the following statement in the Conference Committee Report, discussed above: “The conferees intend that the term ‘attorneys’ fees as part of the costs’ include reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the . . . case.” H. R. Conf. Rep. No. 99-687, at 5.
Whatever weight this legislative history would merit in another context, it is not sufficient here. Putting the legislative history aside, we see virtually no support for respondents’ position. Under these circumstances, where everything other than the legislative history overwhelmingly suggests that expert fees may not be recovered, the legislative history is simply not enough. In a Spending Clause case, the key is not what a majority of the Members of both Houses intend but what the States are clearly told regarding the conditions that go along with the acceptance of those funds. Here, in the face of the unambiguous text of the IDEA and the reasoning in Crawford Fitting and Casey, we cannot say that the legislative history on which respondents rely is sufficient to provide the requisite fair notice.
* * *
We reverse the judgment of the Court of Appeals for the Second Circuit and remand the case for further proceedings consistent with this opinion.

It is so ordered.

 Because subparagraph (A) refers to both “costs” and “expenses” awarded to prevailing parties and because it is generally presumed that statutory language is not superfluous, it could be argued that this provision manifests the expectation that prevailing parties would be awarded certain “expenses” not included in the list of “costs” set out in 28 U. S. C. § 1920 and that expert fees were intended to be among these unenumerated “expenses.” This argument fails because, whatever expectation this language might seem to evidence, the fact remains that neither 20 U. S. C. § 1415 nor any other provision of the IDEA authorizes the award of any “expenses” other than “costs.” Recognizing this, respondents argue not that they are entitled to recover “expenses” that are not “costs,” but that expert fees are recoverable “costs.” As a result, the reference to awards of both “expenses” and “costs” does not support respondents’ position. The reference to “expenses” may relate to IDEA actions brought in state court, § 1415(i)(2)(A), where “expenses” other than “costs” might be receivable. Or the reference may be surplusage. While it is generally presumed that statutes do not contain surplusage, instances of surplusage are not unknown.

 In 2000, the attorney’s fees provision provided only an award to prevailing parents. See 20 U. S. C. § 1415(i)(3)(B). In 2004, Congress amended § 1415(i)(3)(B) to include two additional awards. See § 101, 118 Stat. 2724. The amendments provided awards “to a prevailing party who is a State educational agency or local educational agency” where the complaint filed is frivolous or presented for an improper purpose, such as to harass, delay, or increase the cost of litigation. See 20 U. S. C. §§ 1415(i)(3)(B)(i)(II)—(III) (2000 ed., Supp. V).

 Respondents note that a GAO report stated that expert witness fees are reimbursable expenses. See Brief for Respondents 19 (citing GAO, Briefing Report to Congressional Requesters, Special Education: The Attorney Fees Provision of Public Law 99-372 (GAO/HRD-90-22BR), p. 13 (Nov. 1989)). But this passing reference in a report issued by an agency not responsible for implementing the IDEA is plainly insufficient to provide clear notice regarding the scope of the conditions attached to the receipt of IDEA funds.