COLE, Chief Judge,
concurring.
Although I agree that the plaintiffs cannot recover from the prison officials in their individual capacities, I respectfully depart from the majority’s analysis. I do so for two reasons: first, to explain why *571 Sossamon v. Texas, — U.S. -, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011), does not resolve the money-damages claim, and second, to express my view that we do not need to reach the plaintiffs’ argument that RLUIPA’s Commerce Clause basis authorizes money damages.
There can be no question that Sossamon was decided on narrow grounds specific to the legal framework at issue in that case— namely, sovereign immunity. Indeed, the Court noted that “the word ‘appropriate’ is inherently context-dependent,” and then went on to conclude that “[t]he context here — where the defendant is a sovereign — suggests ... that monetary damages are not ‘suitable’ or ‘proper.’” 131 S.Ct. at 1659 (emphasis added). Sossa-mon does not establish that RLUIPA’s provision for “appropriate relief’ categorically excludes monetary damages. It establishes only that the term “does not so clearly and unambiguously waive sovereign immunity to private suits for damages that we can be certain that the State in fact consents to such a suit.” Id. at 1658-59 (internal quotation marks omitted).
The majority’s reliance on Sossamon has the virtue of simplicity, but it ignores the fact that courts operate under different presumptions when encountering a request for monetary relief from a state, as opposed to a request for monetary relief from an officer sued in his or her individual capacity. When a plaintiff sues the state, we presume that money damages are unavailable, unless the state has consented to an express waiver of its immunity. See, e.g., Blatchford v. Native Vill. of Noatak and Circle Vill., 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). In contrast, we regularly grant monetary relief to plaintiffs who successfully sue officers in their personal capacities. See, e.g., Smith v. City of Chi., 820 F.2d 916, 918 (7th Cir.1987) (noting that “[sjuits under § 1983 typically seek money damages”). It is therefore fair to assume that a provision for “appropriate relief’ would not authorize money damages from the state absent the state’s waiver, but would authorize them from personal-capacity defendants absent some other legal principle limiting the scope of the term “appropriate.”
That other legal principle can be found in Arlington Central — a case that should be central to our Spending Clause analysis. There, the Court extended Pennhurst’s clear-statement principle to apply not only to the conditions a Spending Clause enactment' places on participating states, but also to the remedies the enactment makes available when a state fails to comply. See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 296, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006); id. at 317, 126 S.Ct. 2455 (Breyer, J., dissenting) (both citing Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)). Thus, the Court concluded that a provision allowing plaintiffs to collect “reasonable attorneys’ fees as part of the costs” of bringing suit did not encompass expert fees because the statute had failed to put the states on notice that they could be liable for this expense. Id. at 296-97, 126 S.Ct. 2455 (quoting 20 U.S.C. § 1415(i)(3)(B)).
Arlington Central controls here and requires that RLUIPA “furnish[ ] clear notice regarding the liability at issue.” Id. at 296, 126 S.Ct. 2455. In my view, RLUI-PA’s provision for “appropriate relief’ does not “unambiguously authorize” prisoners to recover money damages from prison officials.[1] Id. at 303, 126 S.Ct. 2455. *572 I therefore agree with my colleagues that the relief the plaintiffs seek is not available.
As the majority explains, the plaintiffs also argue that Congress could have authorized money damages from personal-capacity defendants under its commerce power. I do not find it necessary to address this argument, however, because the plaintiffs did not invoke interstate commerce as a basis for their claims in district court, and the district court never considered this issue. See Washington v. Gonyea, 731 F.3d 143, 146 (2d Cir.2013) (declining to consider “whether RLUIPA authorizes individual-capacity suits under the imprimatur of the commerce clause” where plaintiff “pled no facts” pertaining to interstate commerce); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir.2009) (same, where plaintiff “has claimed RLUI-PA jurisdiction exclusively under” the statute’s Spending Clause provision). Moreover, RLUIPA’s Commerce Clause basis implicates constitutional issues of the sort that courts avoid considering unless necessary. See Lyng v. Nw. Indian Cemetery Protective Ass’n, 485 U.S. 439, 445-46, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988).
My colleagues take a different approach. In only a few words, they swiftly conclude that a dear-statement rule applies to the remedies available under a Commerce Clause enactment, effectively extending Arlington Central to the interstate-commerce context. The Supreme Court does not require them to do so. Our court does not require them to do so. And I wonder how the “usual constitutional balance between the States and the Federal Government,” Maj. Op. at 569, would be upset by a request for monetary relief against an official in his or her personal capacity.
Unlike my colleagues, I see no reason to extend a dear-statement rule to a context in which it does not clearly apply. Furthermore, I believe that the constitutional avoidance doctrine counsels us against doing so. Although the dear-statement principle has been characterized as a “rule of statutory interpretation,” see, e.g., Sch. Dist. of City of Pontiac v. Sec’y of U.S. Dep’t of Educ., 584 F.3d 253, 284 (6th Cir.2009) (en banc) (Sutton, J., con *573 curring), in effect it operates much like substantive constitutional doctrine by directing how courts should weigh the Constitution’s competing values and interests. See John F. Manning, Clear Statement Rules and the Constitution, 110 Colum. L.Rev. 399, 445, 449 (2010) (concluding that “Modern clear statement rules attempt to make constitutional law on the cheap” when they “transform a multifaceted constitutional doctrine into a streamlined one-dimensional constitutional value[,] such as federalism”); William N. Eskridge. Jr. & Philip P. Frickey, Quasi-Constitutional Law: Clear Statement Rules as Constitutional Lawmaking, 45 Vand. L.Rev. 593, 611-12 (1992) (arguing that the clear-statement principle “has replaced constitutional law” as the Court’s means for enforcing federalism). In my view, then, extending a clear-statement rule to a new context is akin to adopting a new principle of constitutional law. I would reserve any discussion of RLUI-PA’s Commerce Clause basis for a case that squarely presents that issue to us.

. Arlington Central indicates that we may look to sources of meaning other than the statute’s plain text to shed light on the ambiguous term in question. Id. at 296-303, 126 S.Ct. 2455. *572 The plaintiffs here make two main arguments that RLUIPA authorizes monetary relief. First, they note that, in Barnes v. Gorman, 536 U.S. 181, 187, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002), and Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 66, 76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), the Supreme Court determined that "appropriate” remedies include compensatory damages when the type of relief available under a statute is uncertain. But because these cases pre-date Arlington Central and its extension of the dear-statement rule in the Spending Clause context, they cannot so easily resolve the question here.
Next, the plaintiffs point out that RLUIPA defines "government” as including "any ... person acting under color of State law.” 42 U.S.C. § 200Occ — 5(4)(A)(iii). This language, they argue, echoes § 1983 and therefore points to the availability of money damages. However, the phrase "person acting under color of State law” or its equivalent is used in numerous sections of the United States Code, many having nothing to do with the availability of money damages. See, e.g., 18 U.S.C. § 2511(2)(c) & (d) (regarding interception of wire and electronic communications); 28 U.S.C. § 1365(a) (granting jurisdiction for actions brought by Senate to enforce subpoenas or other orders); 28 U.S.C. § 1443 (authorizing removal to federal court of civil-rights actions). Additionally, contrary to the plaintiffs' assertions, this language is not necessarily superfluous if we decline to accept their interpretation. For example, the phrase "acting under color of State law” provides guidance as to which prison officials a prisoner can sue. See, e.g., Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 919, 927 (9th Cir.2011) (holding that prison's "contract chaplains” are not state actors for purposes of RLUIPA).