**TORRES–SERRANT, et al., Plaintiffs**

v.

**DEPARTMENT OF EDUCATION OF PUERTO RICO et al., Defendants.**

**Civil No. 14–1776(GAG).**

United States District Court, D. Puerto Rico.

Signed April 20, 2015.

Francisco J. Vizcarrondo–Torres, for Plaintiffs.

Frances Y. Rivera–Aviles, for Defendants.

### OPINION AND ORDER

GUSTAVO A. GELPÍ, District Judge.

The issue the court faces today arises because of the Commonwealth of Puerto Rico's unique one hundred and seventeen (117) year old relationship with the United States. The dispute at hand stems from both the Commonwealth's political limbo— an all-too-common issue—that is, the Commonwealth's treatment as a State for the grand majority of legal purposes [1], as in this case, and as a territory for others, and the fact that, although officially a bilingual jurisdiction with Spanish and English as its official languages [2], its population is largely Spanish-speaking. Given said cultural reality, judicial and administrative proceedings in the Commonwealth courts and agencies are conducted in the language of Cervantes rather than that of Shakespeare, while those at the federal level are officiated in the latter tongue. The question pending before this court is straightforward: which party is responsible for paying the costs of translating into the English language the administrative record of the hearings held before the Commonwealth's Department of Education brought pursuant to the Individual with Disabilities Education Act ("IDEA",) 20 U.S.C. § 1400 *et seq.* Said record is required in cases as this because this court must conduct a *de novo* judicial review of the Commonwealth's administrative decision.

### I. Relevant Procedural History

On December 23, 2014, the court issued an order denying Defendants' Motion to dismiss (Docket No. 10) for failure to state a claim upon which relief can be granted and instructed Defendants to file an official copy of the entire administrative record. (Docket No. 16.) Defendants, subsequently, filed a Motion seeking clarification of said order because it did not specify which party had to incur the costs of the appropriate translations of the administrative record. (Docket No. 19.)

In their Motion to clarify, Defendants concede that they are not opposed to filing a written record of the entire administrative proceedings. *Id.* at 2. In fact, Defendants have already filed it. *See* Docket No. 25. Defendants, however, argue that Plaintiffs, as the moving parties, should pay the costs of the certified translations of the parts of the administrative record that they deem necessary to prove the allegations of their complaint. *Id.* Moreover, they argue that Plaintiffs could have presented their case in the Commonwealth courts, avoiding translation fees, yet they chose the federal forum. Defendants also posit that they prevailed in the administrative proceeding, hinting they most likely will prevail here, and that the costs of translation, which they estimated at around $25,000.00, will be exorbitant and burdensome to the Commonwealth and not

---

**1.** *See Consejo de Salud Playa de Ponce v. Rullán,* 586 F.Supp.2d 22, 37 (D.P.R.2008) (noting that "[a]ll federal laws, criminal and civil in nature, apply to Puerto Rico as they apply to the States, unless otherwise provided"); *see also United States v. Santiago,* 998 F.Supp.2d 1, 2 (D.P.R.2014) ("Congress may constitutionally extend the application of federal criminal and civil statutes to Puerto Rico").

**2.** Neither the Commonwealth's Constitution nor the Federal Relations Act, 48 U.S.C. § 731 *et seq.,* establishes an official language for the Commonwealth of Puerto Rico. However, legislation provides that Spanish and English are both the official languages of the Government of Puerto Rico. *See* 1 P.R. Laws. Ann. §§ 59.

proportional to the relief sought by Plaintiffs. *Id.* at 3. Finally, Defendants aver that they have complied with the IDEA requirements by providing a copy of the administrative record at no cost to Plaintiffs, but that translating said documents are not a burden they should carry. If the court orders Defendants to provide the translations, Defendants attest that an adverse precedent will be established, inciting non-prevailing litigants in the administrative forum to file a federal suit to force the agency to settle the case in hopes of avoiding overspending on translations. *Id.* at 4.

The court denied without prejudice Defendants' motion and ordered Plaintiffs to respond to Defendants' contentions regarding the issue of translation fees. (Docket No. 20.) The court, moreover, instructed the parties to agree on which parts of the administrative record are relevant and hence must be translated to comply with the English-language requirement. *Id.*

Plaintiffs, in turn, countered that Defendants should be liable for the costs of translating all the documents and hearing transcripts that the parties deem relevant for the court's *de novo* review. (Docket No. 23.) Plaintiffs posit that because all litigation in this federal forum must be conducted in English, the IDEA safeguards and provisions should be interpreted to hold Defendants liable for these costs and, that to hold otherwise, would deprive Plaintiffs and other individuals protected by the IDEA from exercising their right to bring civil suit in the federal courts. *Id.* at 3. In addition, Plaintiffs aver that the Department of Education ("DOE"), as custodian of the administrative proceedings, has a duty to submit the administrative record to allow for judicial review and, as recipient of federal funding subject to strict compliance with IDEA and other federal requirements, it should have implemented measures to comply with the IDEA safeguards regarding the translation of records. *Id.* at 4. Finally, Plaintiffs assert that Congress expressly included Puerto Rico within IDEA's definition of a "State," and, aware that Puerto Rico is a Spanish speaking jurisdiction, it did not create an exception to the IDEA requirement of providing a written record of the administrative proceeding. Therefore, in complying with IDEA, the DOE should pay the translation fees of all pertinent parts of the administrative record. *Id.* at 4–5.

Thereafter, the parties complied with the court's order and jointly identified which parts of the administrative record are required for judicial review. The documents which the parties agreed shall be translated to the English language are listed in Docket No. 27. Hence, the issue pending before the court is clear—which party shall pay the translation costs of the relevant portions of the administrative proceedings to fulfill the English-language requirement contained in 48 U.S.C. § 864. The court addresses this question in turn.

## II. Discussion

"Congress designed the IDEA as part of an effort to help states provide educational services to disabled children." 20 U.S.C. §§ 1400–1491; *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 34 (1st Cir.2012) (citing *C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist.*, 513 F.3d 279, 284 (1st Cir.2008)). A state receiving federal funding under the IDEA must offer a FAPE (free appropriate public education) to every disabled child within its jurisdiction. *See* 20 U.S.C. § 1412(a)(1)(A). "A FAPE encompasses special education and support services provided free of charge." *C.G.*, 513 F.3d at 284 (citing 20 U.S.C. § 1401(9)). To ensure the continued adequacy of a child's special education through IDEA's primary vehicle for deliv-

ering a FAPE, the IEP (individualized education program), the child's parents and educators must continuously evaluate the IEP. IDEA provides for due process hearings and appeals to that effect. Thus, a parent or guardian may challenge an IEP's adequacy by demanding a due process hearing before the state educational agency. *See* 20 U.S.C. §§ 1415(b)(2), 1415(c). In the event of an adverse decision, a parent or guardian may seek further review in state or federal court. *See id.* at § 1415(i)(2).

Therefore, having exhausted the IDEA's administrative process, "[e]ither side may then appeal from the hearing officer's final decision to *either a federal or state court* of competent jurisdiction." *Lessard v. Wilton Lyndeborough Coop. Sch. Dist.*, 518 F.3d 18, 24 (1st Cir.2008); *see also* 20 U.S.C. § 1415(i)(2)(A); *D.B.*, 675 F.3d at 35. Subsection (i)(2)(A) provides for the right to bring a civil action under these circumstances:

> Any party aggrieved by the findings and decision made under subsection (f) [Impartial due process hearing] or (k) [placement in alternative education setting] who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, *shall have the right to bring a civil action* with respect to the complaint presented pursuant to this section, *which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.*

20 U.S.C. § 1415(i)(2)(A). The IDEA hence allows a plaintiff to file a civil action seeking judicial review of state administrative decisions, in federal or state courts. *Id.* The aggrieved party chooses where to bring said suit. *Id.* As such, Plaintiffs had the option of filing suit in this district court, like they did, or they could have filed in any Commonwealth court with jurisdiction.[3] It thus becomes apparent that Defendants' contention that Plaintiffs could avoid translation costs by filing their case in state rather than federal court must fail because the IDEA expressly grants aggrieved parties the right to seek judicial review of the administrative hearing officer's decision by bringing suit in the forum of their choice. *Id.; C.G.,* 513 F.3d at 285. To compel or coerce Plaintiffs, or any other person protected under the IDEA, to file this type of suit in the Commonwealth courts to avoid translation expenses nullifies Plaintiffs' right to bring suit in this federal forum if they elect to do so.

The court now turns to the judicial review process. When an action is brought in the district court seeking judicial review of the decision of a state education agency, such as in the present case, the IDEA requires the court to "receive the records of the administrative proceeding," 20 U.S.C. § 1415(i)(2)(c)(i). The relevant statutory provision requires the forum court to *mull the administrative record,* take additional evidence under certain circumstances, and to base "its decision on the preponderance of the evidence." *Id.* §§ 1415(i)(2)(c)(iii). In the course of this independent review, the administrative proceedings must be accorded "due weight." *Lenn v. Portland Sch. Comm.,* 998 F.2d 1083, 1086–87 (1st Cir.1993); *Board of Educ. v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

---

**3.** Generally, federal judges have more expertise in commonly recurring federal matters than state judges. Thus, a party's choice to file an IDEA action in federal court cannot be questioned as a frivolous one. Moreover, federal courts, as courts of limited jurisdiction, can resolve matters more expeditiously than state courts, whose caseload by far exceeds that of federal courts.

The IDEA contemplates that the court shall receive the records of the administrative proceeding and the state agency, here, the DOE, which keeps such records, is the party responsible for producing a complete and accurate copy of the administrative record. 20 U.S.C. § 1415(i)(2)(C)(i) (providing that "[i]n any [civil] action brought under this paragraph, the court ... shall receive the records of the administrative proceedings"); *see Diaz–Fonseca v. Puerto Rico,* 451 F.3d 13, 25 (1st Cir.2006). Notably, Defendants acknowledge the DOE's duty to do so. They did not oppose said responsibility and have complied with filing a copy of the entire administrative proceeding. *See* Docket No. 25. Yet, Defendants insist that Plaintiffs must carry the burden of producing the translations of the agreed-upon parts of the administrative record.

At the outset, Local Rule 10(b) "requires litigants to submit English translations of any document to be used as evidence" and provides that "reasonable costs of translating documents may be allowed if the documents are relevant to the litigation." *See* Local Rule 10(b); *Zayas v. Puerto Rico,* 451 F.Supp.2d 310, 318 (D.P.R.2006). In *Zayas,* the parents of a disabled student filed suit against the DOE under ADA, IDEA, and other statutes. 451 F.Supp.2d at 318. Following a bench trial, on the parents' motion requesting attorney's fees, the court awarded Plaintiffs the costs incurred in translations. *Id.* at 317. Although the issue here is *not* one of taxation of costs to the prevailing party under IDEA, 20 U.S.C.A. § 1415(3)(B), there is no doubt that the Spanish documents at issue are entirely relevant for the court to conduct its judicial review and resolve this controversy.

In addition, it is also pellucid that said documents must be translated to the English language. *See* 48 U.S.C. § 864 ("[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language.") The First Circuit has held that this duty must not be taken lightly, as it ensures that the District of Puerto Rico remains an integrated part of the federal judiciary. *See Estades–Negroni v. Assocs. Corp. of N. Am.,* 359 F.3d 1, 2 (1st Cir.2004) (discussing the importance of the English-language requirement and holding that "federal litigation in Puerto Rico [must] be conducted in English"); *see also United States v. Millan–Isaac,* 749 F.3d 57, 63 (1st Cir.2014); *González–De-Blasini v. Family Department,* 377 F.3d 81, 89 (1st Cir.2004).

■ In light of the pertinent aforementioned law, Defendants are responsible for translating the relevant parts of the administrative record which are necessary for the court to conduct its judicial review. First, as discussed above, the IDEA grants Plaintiffs the right to seek judicial review of the administrative decision in federal court and to conduct its *de novo* review the court must examine and mull over the administrative record. The pertinent state agency is responsible for providing the court with a copy of the entire administrative record. Defendants agree and complied with this requirement; so far so good. The ensuing issue is that the record is in Spanish and Defendants do not want to pay the costs of translating it to the mandatory English language. Because all proceedings in this court must be conducted in English, it therefore follows in sound judgment that Defendants should be responsible for the costs incurred in translating the administrative record. To hold otherwise would shift the burden of the state agencies' duty to Plaintiffs, who are exercising their IDEA-given rights.

This determination is moreover consistent with the IDEA's statement of purposes which expressly recognizes the statute's mission of "ensur[ing] that the rights

of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(B). It is moreover consonant with the IDEA's establishment of procedures section, which states that "[a]ny State educational agency, State agency, or local educational agency that receives assistance under this subchapter *shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards* with respect to the provision of a free appropriate public education by such agencies." *Id.* § 1415(a).

Further, the IDEA expressly includes the Commonwealth of Puerto Rico within the meaning of the term "State." *Id.* § 1401(31). As such, in suits against the Commonwealth for violating IDEA provisions, it is treated as a state which abrogated its Eleventh Amendment sovereign immunity. 20 U.S.C.A. § 1403; *see also Redondo Constr. Corp. v. P.R. Highway & Transp. Auth.*, 357 F.3d 124, 125 n. 1 (1st Cir.2004); *Diaz–Fonseca*, 451 F.3d at 33. The IDEA conditions the state's receipt of federal funding to it consenting to be sued under the IDEA. *See* 20 U.S.C. § 1403(a) (conditioning a state's receipt of federal IDEA funds to its consent to suit under that statute); *see also Nieves–Marquez v. Puerto Rico*, 353 F.3d 108 at 127–30 (1st Cir.2003); *Diaz–Fonseca*, 451 F.3d at 33. Hence, the Commonwealth waived its Eleventh Amendment immunity by applying for and accepting federal funds for the IDEA programs involved. *Nieves–Marquez*, 353 F.3d at 127.

■ The resolution of this issue is guided by the fact that "Congress enacted the IDEA pursuant to the Spending Clause." U.S. Const. art. I, § 8, cl. 1; *see Schaffer v. Weast*, 546 U.S. 49, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). The IDEA grants federal funds to assist state and local agencies in educating children with disabilities

"and conditions such funding upon a State's compliance with extensive goals and procedures." *Rowley*, 458 U.S. at 179, 102 S.Ct. 3034. Congress has broad power to set the terms on which it disburses federal money to the states. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 295–96, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006); *see South Dakota v. Dole*, 483 U.S. 203, 206–207, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). Congress did just that by conditioning the state's eligibility to receive federal funding under IDEA to the establishment of a plan which ensures that the state, in this case the Commonwealth, "has in effect policies and procedures to ensure that [it] meets" certain conditions. 20 U.S.C. § 1412(a). Thus, to qualify for federal funding under IDEA, the states must ensure all children with disabilities and their families a free appropriate public education (FAPE) and guarantee the procedural safeguards required under 20 U.S.C.A. § 1415, such as the parents' right to challenge adverse administrative decisions. 20 U.S.C. §§ 1400(c), 1412(a)(1).

The Commonwealth receives federal funding, and, in this context, it has to comply with the IDEA requirements and procedural safeguards in a way "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207, 102 S.Ct. 3034; *accord Amann v. Stow Sch. Sys.*, 982 F.2d 644, 647 (1st Cir.1992); *Lenn*, 998 F.2d at 1086. By accepting federal funds, the Commonwealth is treated like any other state for IDEA purposes. The court notes, however, that Congress enacted the IDEA in the context of the continental United States, where English is the official and predominant language. Puerto Rico, conversely, is largely a Spanish-speaking jurisdiction; thus, the present issue is unique to it.

Congress, aware of the fact that the Commonwealth is largely Spanish-speak-

ing and thus all state-level proceedings, like DOE administrative hearings, are conducted in Spanish, did not create an exception or caveat for its agencies' obligations under the IDEA. Defendants cannot claim that they are exempted from translating the administrative record when Congress did not propose such an exception. Defendants are asking the court to impose an onerous task not contemplated by law to the children's parents or guardians. By filing the administrative record in Spanish and not wanting to incur in the costs of translating such documents knowing they are required for judicial review before the federal court, where proceedings are conducted in English, Defendants expect to shift the burden imposed to them onto Plaintiff. If Defendants wish to be exonerated from complying with IDEA provisions, they can opt-out of receiving Uncle Sam's generous funds. Like the First Circuit has said, "Puerto Rico has the choice of accepting federal funding elsewhere in its government while declining federal funding for its Department of Education." *Nieves–Marquez*, 353 F.3d at 129.

In sum, Defendants' proffered reasons and explanations as to why Plaintiffs should be responsible for the translation costs of the administrative record are unpersuasive and do not satisfy the requirement of good cause. Requiring Plaintiffs to pay these costs is inconsistent with the IDEA's language and objectives. In addition, compelling Plaintiffs to carry the burden of translation fees is cumbersome for said party and threatens IDEA's provisions. A holding in favor of having Plaintiffs pay the translation of the administrative record, which state agencies must produce, combats sound judgment and can negatively influence a future plaintiff's decision to file a civil suit in federal court.

It is no secret that the Commonwealth's fiscal condition has been and remains in a precarious state for the past decade. Therefore, the court offered Defendants a reasonable alternative to cut translation costs—an opportunity to confer with Plaintiffs and agree upon which parts of the administrative record were necessary to address the claims in this case. The parties conferred and complied accordingly. (Docket No. 27.) Thus, there is no need for a translation of the entire administrative record. Translations of only those relevant parts will certainly reduce costs in a significant manner.

Accordingly, the court agrees with the District Court's decision in *Morales v. Puerto Rico Dep't of Educ.,* No. 04–1760, 2006 WL 1514383, at *5 (D.P.R. May 31, 2006), which determined that "the Puerto Rico Department of Education is the responsible agency" for providing the record and, as a defendant in that case, responsible for paying the costs of translating the administrative hearing. In *Morales,* the court weighed the same arguments Defendants advance in this case—that it is not their responsibility to translate the record from Spanish to English because they "are not the producing party of said document" and "it is not part of [their] documentary evidence in their case in chief." *Id.* The DOE also declared that it would be burdensome for it to produce an English translation of the record because of the fiscal crisis in Puerto Rico. *Id.* The court, nevertheless, determined that the DOE was responsible for filing a certified translation of all or the agreed part of the administrative record with its answer to the amended complaint. *Id.*

The court's holding today is congruous with the holding in *Morales.*[4] The provi-

---

4. In addition, the result is identical to that of judicial review of Social Security administrative determinations authorized by 42 U.S.C.

§ 405(g). In such cases, the Commissioner of Social Security provides a certified copy of the entire administrative record upon which

sions of the IDEA overwhelmingly support this conclusion. For the reasons above, the court orders that the agreed upon relevant parts of the administrative record and all related transcripts and documents shall be translated by the Defendants at their expense.

**IT IS SO ORDERED.**

the findings and decision complained of are based. The Commissioner then translates all documents in Spanish, which here in this

District constitutes by far a large portion of the record.