

# KEN PAXTON

ATTORNEY GENERAL OF TEXAS

May 17, 2016

The Honorable Charles Perry
Chair, Committee on Agriculture, Water,
   and Rural Affairs
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. KP-0087

Re: State compliance with restrictions on federal refugee dollars (RQ-0074-KP)

Dear Senator Perry:

You ask two questions concerning the use of federal refugee dollars by the State of Texas.[1] The federal Refugee Act of 1980 established the Office of Refugee Resettlement (the "ORR"), which funds and administers programs for domestic resettlement and assistance to refugees. 8 U.S.C. § 1521; *see* Refugee Act of 1980, Pub. L. 96-212, 94 Stat. 102. Congress thereby authorized the ORR to provide funds to the states to assist in the states' refugee resettlement efforts. 8 U.S.C. § 1522(a)(6). Federal law does not require that states participate in the refugee program, and a state may cease participation by providing proper notice of its withdrawal from the program. 45 C.F.R. § 400.301(a). Upon a state's withdrawal, the ORR may authorize a private entity to administer the refugee program in the state. *Id.* § 400.301(c). To date, twelve states have chosen to withdraw, but Texas remains a part of the refugee program and currently receives federal funding to implement it in this state.[2]

As a condition of receiving federal funding, a state must "meet standards, goals, and priorities, developed by the Director [of ORR], which assure the effective resettlement of refugees and which promote their economic self-sufficiency as quickly as possible and the efficient provision of services." 8 U.S.C. § 1522(a)(6)(B). Related to this requirement, you first ask whether the State of Texas must "comply with restrictions on federal refugee dollars that are not found in the text of federal law." Request Letter at 1.

The Supreme Court has emphasized that "[t]he Government of the United States has broad, undoubted power over the subject of immigration," and "[f]ederal governance of immigration . . .

---

[1]*See* Letter from Honorable Charles Perry, Chair, Senate Comm. on Agric., Water & Rural Affairs, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Nov. 16, 2015), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2]Office of Refugee Resettlement, State Programs Annual Overview, http://www.acf.hhs.gov/programs/orr/state-programs-annual-overview.

is extensive and complex." *Arizona v. United States*, 132 S. Ct. 2492, 2498–99 (2012). However, "[t]he pervasiveness of federal regulation does not diminish the importance of immigration policy to the States." *Id.* at 2500. While Congress has broad power to set the terms on which it disburses federal money to the states, any conditions it attaches to a state's acceptance of such funds "must be set out unambiguously." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (quotation marks omitted). The U.S. Supreme Court has explained that "the key is . . . what the States are clearly told regarding the conditions that go along with the acceptance" of federal funds. *Id.* at 304. There can "be no knowing acceptance if a state is unaware of the conditions or is unable to ascertain what is expected of it." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). "Legislation enacted pursuant to the spending power is much in the nature of a contract, and therefore, to be bound by federally imposed conditions, recipients of federal funds must accept them voluntarily and knowingly." *Murphy*, 548 U.S. at 296 (quotation marks omitted). Thus, the Court has required that "*Congress* speak with a clear voice" to enable the states to exercise their choice knowingly. *Halderman*, 451 U.S. at 17 (emphasis added).

Few restrictions on refugee funding to the states are found in the text of the federal statute, and instead Congress has required that the states abide by the "standards, goals, and priorities" developed by the ORR. 8 U.S.C. § 1522(a)(6). In delegating this authority to a federal agency, Congress itself has failed to provide clear notice to the states about the conditions it is attaching to a state's acceptance of federal refugee dollars. A court would therefore likely conclude that any such conditions that are not found in the text of a federal statute are unenforceable under the Supreme Court's clear notice rule.

Your second question asks whether "there is a legal prohibition to the State of Texas performing security verifications when allocating refugee funding." Request Letter at 1. The federal Refugee Act of 1980 and its subsequent amendments do not specifically address nor prohibit the states from performing their own security assessments. *See* 8 U.S.C. § 1522. However, Congress has established laws for the treatment of immigrants and refugees in the United States, and the Supreme Court has invalidated certain state laws on the grounds that they are preempted by the federal immigration scheme. *See Arizona*, 132 S. Ct. at 2503 (concluding that a state law requiring aliens to carry registration documents was preempted by federal law). Depending on how specific security verifications are established and administered, a fact question could arise about whether specific verifications are preempted by federal law.

In addition, specific verifications could invoke the Equal Protection Clause of the Fourteenth Amendment, which requires that no state "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Under traditional equal protection principles, however, action that does not draw a distinction along suspect lines such as race or gender passes muster under the Equal Protection Clause as long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). There is no question that security concerns may provide a rational basis on which a state could distinguish between individuals deemed to pose a heightened security risk and those who do not. *See Unruh v. Moore*, 326 Fed. App'x. 770, 772 (5th Cir. 2009) (rejecting an equal protection claim based on rational basis where an individual was treated differently due to disciplinary history and security concerns). Thus,

while we do not opine on the legality of any specific security verifications that the State may impose, we have not been directed to, nor do we find any law generally prohibiting the State from performing security verifications when allocating refugee funding.

## S U M M A R Y

A court would likely conclude that any conditions placed on a state's acceptance of federal refugee dollars that are not found in the text of a federal statute are unenforceable because the conditions do not provide clear notice to the state of how it must use the federal funding.

We find no law generally prohibiting the State of Texas from performing security verifications when allocating refugee funding.

Very truly yours,

*Ken Paxton*

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee