# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-3255

_____

Osseo Area Schools, Independent School District No. 279,

*Plaintiff - Appellant*,

v.

M.N.B., by and through her Parent, J.B.,

*Defendant - Appellee*.

------------------------------

Minnesota Association of School Administrators; Minnesota School Boards Association,

*Amici on Behalf of Appellant(s)*.

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: November 12, 2019
Filed: July 29, 2020

_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A State that receives federal funding under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, must provide a free appropriate public education to all eligible students with disabilities who reside in the State. Independent of the IDEA, Minnesota has adopted an "open enrollment" process that allows a parent to enroll a student in a school outside of the student's local district. The question presented here is whether the IDEA requires a school district that enrolls a nonresident student like M.N.B. to provide transportation between the student's home and the school district where her parent has chosen to enroll her. We locate no such obligation under the IDEA, so we reverse the district court's judgment to the contrary.

I.

The State of Minnesota receives federal funding under the IDEA. To receive these funds, a State must ensure, with exceptions not applicable here, that a "free appropriate public education," or FAPE, is available to all children with disabilities residing in the State. 20 U.S.C. § 1412(a)(1)(A). A free appropriate public education includes "special education and related services" that are provided in conformity with an "individualized education program," or IEP. An IEP is an educational plan developed by the student's parents, representatives of the school district, and other individuals, as appropriate. *Id.* §§ 1401(9)(D), 1414(d). Transportation of the student may be a "related service."

Minnesota also operates an open enrollment program under which most students in kindergarten through 12th grade are eligible to attend a school outside of the district in which they reside. A parent may apply for a student to attend school in a nonresident district. Minn. Stat. § 124D.03, subdiv. 3. Once a student is accepted by a nonresident district, Minnesota law provides that "[r]esponsibility for

transportation costs between the pupil's home and the providing school district shall be determined in accordance with Minnesota Statutes." Minn. R. 3525.0800, subp. 8. Under the open enrollment statute, the nonresident school district must provide transportation only "within the district." Minn. Stat. § 124D.03, subdiv. 8. Another statute on student transportation provides that "[i]f requested, a nonresident district shall transport a nonresident pupil *within its borders* and may transport a nonresident pupil within the pupil's resident district." Minn. Stat. § 123B.88, subdiv. 6 (emphasis added).

M.N.B. resides in Big Lake, Minnesota, and requires special education. Her residence is located in the Big Lake Schools, Independent School District No. 727. The Big Lake District referred M.N.B. to Karner Blue Education Center, a school in the Northeast Metro Intermediate School District No. 916. She attended this school for the third and fourth grades. An IEP developed with Karner Blue in October 2015 provided that M.N.B. should be "transported individually to and from school." To meet this obligation, the Big Lake District reimbursed M.N.B.'s mother, J.B., based on mileage driven to and from Karner Blue each day from September 2015 to June 2016. According to J.B., she was informed in May 2016 that M.N.B. could not return to the Northeast Metro District, because Big Lake was not a "member district." *See* Minn. Stat. § 136D.71.

In September 2016, J.B. applied under the Minnesota open enrollment program for M.N.B. to enroll in Osseo Area Schools, Independent School District No. 279. The Osseo District approved the application, and M.N.B. began attending the North Education Center in New Hope for the fifth grade. This school is located about five miles from Osseo and thirty-four miles from M.N.B.'s home in Big Lake. The North Education Center is part of Intermediate School District No. 287, a special education district created by several school districts including the Osseo District. *See* Minn. Stat. § 136D.21. J.B. and North Education Center were unable to agree on a new individualized education program for M.N.B.

J.B. continued to drive M.N.B. to and from school. The parties disputed the extent to which the Osseo District was required to reimburse her for transportation expenses. J.B. sought reimbursement for mileage costs between her home and the North Education Center. The Osseo District maintained that because M.N.B. resided in Big Lake, and attended North Education Center via placement by the Osseo District through the open enrollment program, the Osseo District was required to reimburse J.B. only for mileage costs from the border of the Osseo District to the school. The Osseo District declined to reimburse J.B. for transportation costs between M.N.B.'s home in Big Lake and the Osseo District.

J.B. filed a complaint with the Minnesota Department of Education alleging that the Osseo District violated the IDEA by declining to reimburse the full amount of transportation expenses. *See* 34 C.F.R. § 300.507. The Osseo District requested a due process hearing from the Department on the same issue. *See* 34 C.F.R. § 300.511. An administrative law judge considered the matter and ruled that the Osseo District was required to reimburse the cost of transportation for the full distance between M.N.B.'s home and the school in which the Osseo District placed her.

The Osseo District brought an action in the district court to challenge the administrative decision. *See* 20 U.S.C. § 1415(i)(2). The district court granted summary judgment for M.N.B., reasoning that "[b]ecause the District is responsible for providing M.N.B. with a FAPE, it is necessarily responsible for providing her with specialized transportation as stated in her IEP." The court concluded that J.B.'s decision to enroll M.N.B. in the Osseo District through open enrollment did not affect this conclusion.

## II.

On appeal, the Osseo District renews its contention that the IDEA does not require it to pay for transportation between M.N.B.'s home and a school where she was placed through the Osseo District. It is agreed that M.N.B.'s individualized education program calls for individual transportation to and from school. It is also undisputed that M.N.B. resides in the Big Lake District, has an IEP that places her at Karner Blue Education Center, and now attends school at North Education Center based on her parent's choice to enroll her in the Osseo District through the open enrollment program. Although M.N.B. apparently could not return to Karner Blue for the fifth grade, the IEP developed in the Big Lake District remains in effect during these proceedings. 20 U.S.C. § 1415(j); *Honig v. Doe*, 484 U.S. 305, 323 (1988); R. Doc. 28, at 44 n.35.

A State's obligations under the IDEA arise from conditions imposed by the statute in exchange for the receipt of federal funds. The principal obligation is to provide a FAPE to all eligible children with disabilities. 20 U.S.C. § 1412(a); *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017). A State must certify to the Secretary of Education that it has "policies and procedures" that will effectively meet the Act's conditions, including the provision of a FAPE to eligible students. *See* 20 U.S.C. § 1412(a). A "local educational agency," in turn, is eligible to receive a share of a State's federal funds if it "has in effect policies, procedures, and programs that are consistent with the State policies and procedures." *Id.* § 1413(a)(1). A school district's obligations under the IDEA are thus measured by the State's obligations, which the district is charged with implementing at the local level. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52-53 (2005); *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 891 & n.8 (1984).

In this case, the State met its obligation under federal law to provide a FAPE by enrolling M.N.B. at Karner Blue Education Center, in accordance with her

individualized education program, and by reimbursing her parent for the cost of transportation to and from that school. After two years at Karner Blue, however, M.N.B.'s parent chose to enroll M.N.B. in the Osseo District through the Minnesota open enrollment program. The North Education Center is not located in the district where the student resides and is not the placement agreed upon by parents and school officials in the IEP that called for individual transportation. The IDEA does not speak directly to whether a State is required to assume the cost of transporting a student to and from a school of her parent's choice in that situation.

In determining whether a State and local educational agency are required to provide services, we must consider that any obligations flow from conditions on the receipt of federal funds. Under the Spending Clause of the Constitution, "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Therefore, "we must view the IDEA from the perspective of a state official who is engaged in the process of deciding whether the State should accept IDEA funds and the obligations that go with those funds." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). In so doing, "we must ask whether the IDEA furnishes clear notice regarding the liability at issue in this case." *Id*. That is particularly true where, as here, the question is whether the statute imposes a new programmatic obligation on the State. *See id*. at 305 (Ginsburg, J., concurring in part and concurring in the judgment).

We see nothing in the IDEA that provides clear notice to a State that it must cover transportation expenses when a student's travel is the result of a parent's choice under an open enrollment program. To be sure, the IDEA requires the State to provide the student with a FAPE, and M.N.B.'s individualized education program calls for individual transportation to and from school. But the Big Lake District is required by state law to provide a FAPE for all residents of the district, *see* Minn. Stat. § 125A.03, and the State satisfied the obligation to provide a FAPE when the

Big Lake District reimbursed the cost of transporting M.N.B. to and from the school that was agreed upon in her IEP.  That was sufficient to meet the federal statutory conditions, and the IDEA does not unambiguously require the State to do more because M.N.B.'s parent unilaterally chose to enroll the student elsewhere.  *Cf. Timothy H. v. Cedar Rapids Comm. Sch. Dist.*, 178 F.3d 968, 973 (8th Cir. 1999) (holding that statutory obligation to provide FAPE did not require school district to reimburse parent for intra-district transportation outside of neighborhood school boundary where neighborhood school provided FAPE).

M.N.B. relies on informal guidance from an assistant secretary of education in the federal Office of Special Education and Rehabilitative Services to a state commissioner of education in 1990.  *See Letter to Lutjeharms*, 16 LRP 837 (OSERS March 5, 1990).  The letter reasoned that where the state law under consideration required the enrolling district in an open enrollment program to provide a FAPE, and the student's IEP required transportation, the enrolling district was obligated to provide it.  Minnesota law, however, provides that an enrolling district is responsible for transportation costs only within the district, and the 1990 letter does not address a situation where state law limits the enrolling district's obligations in that manner.  Nor did the 1990 letter address the Spending Clause of the Constitution or whether the IDEA provided States with clear notice of an obligation to fund a student's transportation costs under an open enrollment program.  The letter is not legally binding, *see* 20 U.S.C. § 1406(e); *United States v. Mead Corp.*, 533 U.S. 218, 231-34 (2001), and we ultimately conclude that it is not persuasive authority in support of imposing liability on the school district in this case.

M.N.B. adverts briefly to a 2016 decision of the Minnesota Department of Education on a complaint from other disabled students against the Osseo District.  A department official cited *Letter to Lutjeharms* in the course of concluding that the Osseo District must provide transportation to and from school for a disabled student if transportation is a related service in the student's IEP.  Minn. Dept. of Educ.,

Complaint Decision, File #16-138C, R. Doc. 29, at 175 (Oct. 12, 2016). M.N.B. does not argue, however, that this administrative decision on a complaint of other students has preclusive effect in this case. And the decision may have rested on a mistaken interpretation of state law rather than the IDEA in any event. *See id*. at 190 ¶ 19. The governing Minnesota statutes and rule provide that when a school district enrolls a student through the open enrollment program, it must provide transportation only "within its borders" or "within the district." Minn. Stat. §§ 123B.88, subdiv. 6, 124D.03 subdiv. 8; Minn. R. 3525.0800.*

M.N.B. also cites a decision of the Fifth Circuit holding that after-school transportation for one mile outside a school district's boundaries was a "related service," where it created no burden on the school district and was necessary for a disabled student to meet a caregiver until his working mother could pick him up. *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153, 1159-60 (5th Cir. 1986). That decision did not address transportation costs to and from school under an open enrollment program and does not inform our analysis.

\* \* \*

Under the circumstances presented here, we conclude that the IDEA does not require the Osseo District to reimburse M.N.B.'s parent for the cost of transportation between her home and the border of the Osseo District. The judgment of the district court is therefore reversed.

_____

_____

*Aside from the dispute over transportation, the Osseo District acknowledges that Minnesota law requires it to provide an appropriate education to M.N.B. once she enrolls and arrives in the district. *See* Minn. R. 3525.0800, subp. 8; Appellant's Br. 12. A State may provide educational benefits that exceed those required by the IDEA, and they are enforceable through the federal statute. *Blackmon ex rel. Blackmon v. Springfield R-XII School Dist.*, 198 F.3d 648, 658-59 (8th Cir. 1999).