# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 10, 2015                    Decided July 14, 2015

No. 14-7106

JOSEPHINE MCALLISTER, ET AL.,
APPELLANTS

v.

DISTRICT OF COLUMBIA,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-02173)

---

*Douglas W. Tyrka* argued the cause and filed the briefs for appellants.

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With him on the brief were *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

Before: TATEL and GRIFFITH, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: The Individuals with Disabilities Education Act (IDEA) authorizes courts to award "reasonable attorneys' fees as part of the costs" to plaintiffs who prevail in actions brought under the Act. In these consolidated cases, after prevailing on their IDEA claims, plaintiffs sought attorneys' fees, including fees for work performed by a special education expert employed by their attorney. Concluding that work performed by experts is noncompensable under IDEA, the district court denied the motion. For the reasons set forth in this opinion, we affirm.

**I.**

Enacted "to ensure that the rights of children with disabilities and parents of such children are protected," 20 U.S.C. § 1400(d)(1)(B), IDEA requires that, in exchange for federal funding, states and the District of Columbia "establish policies and procedures to ensure . . . that free appropriate public education, or FAPE, is available to disabled children," *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005) (internal quotation marks omitted). Parents who believe a school district has failed to comply with IDEA's requirements may sue in state or federal court. *Id*. at 520–21 (citing 20 U.S.C. § 1415(i)(2)(A)). Should the parents prevail, the court "may award reasonable attorneys' fees as part of the costs." 20 U.S.C. § 1415(i)(3)(B).

Plaintiffs in these consolidated cases—parents of children with special needs in the District of Columbia Public Schools (DCPS)—brought suit against the school system, alleging various IDEA violations. After prevailing on all claims, plaintiffs sought some $386,000 in attorneys' fees for work performed by their law firm, Tyrka & Associates. The district court disallowed more than fifty percent of the requested fees, including $23,757 for work performed by Sharon Millis, whom Tyrka identified as a paralegal. The district court, relying on Millis's own description of her professional role, as well as its

finding in a prior case classifying Millis as an expert, concluded that Millis had performed as an expert, not a paralegal, and that fees for her work were therefore nonrecoverable as part of "reasonable attorneys' fees." *McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 99, 104 (D.D.C. 2014). The court ultimately awarded plaintiffs $159,133 in attorneys' fees.

Plaintiffs now appeal, challenging only the district court's denial of fees for Sharon Millis's work. We "review[] the district court's denial of . . . attorneys' fees for abuse of discretion," but we "examine *de novo* whether the district court applied the correct legal standard." *Conservation Force v. Salazar*, 699 F.3d 538, 542 (D.C. Cir. 2012) (internal quotation marks and citations omitted).

## II.

Although "[o]ur legal system generally requires each party to bear his own litigation expenses," Congress, in many civil rights statutes such as IDEA, "has authorized courts to deviate from this background rule . . . by shifting fees from one party to another." *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011). In order to "reimburse[] . . . plaintiff[s] for what it cost . . . to vindicate civil rights," such statutes permit courts to reimburse plaintiffs for their attorneys' fees and costs. *Id.* (internal quotation marks and alterations omitted); *see also City of Burlington v. Dague,* 505 U.S. 557, 562 (1992) (listing federal fee-shifting provisions).

This case requires us to determine precisely which expenses are recoverable as "reasonable attorneys' fees as part of the costs," 20 U.S.C. § 1415(i)(3)(B), under IDEA's fee-shifting provision. Three Supreme Court decisions guide our analysis.

In *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989), the Court considered a request for reimbursement of paralegal

fees pursuant to 42 U.S.C. § 1988, which, like IDEA, authorizes recovery of "a reasonable attorney's fee as part of the costs." The Court found it "[c]lear[]" that "'reasonable attorney's fee' cannot have been meant to compensate only work performed personally by members of the bar," but instead "refer[s] to a reasonable fee for the work product of an attorney." *Jenkins*, 491 U.S. at 285. The Court thus broadly interpreted "reasonable attorney's fee" to require compensation for the work of paralegals, law clerks, and all "others whose labor contributes to the work product for which an attorney bills her client." *Id.*

Just three years later in *West Virginia University Hospitals v. Casey*, 499 U.S. 83, 92 (1991), the Court clarified that this broad interpretation of section 1988 does not extend to expert fees, which have historically been "regarded not as a subset of attorney's fees, but as a distinct category of litigation expense." In *Casey*, a statutory and constitutional challenge to Medicaid reimbursement schedules, plaintiff's counsel "employed Coopers & Lybrand, a national accounting firm, and three doctors specializing in hospital finance to assist in the preparation of the lawsuit and to testify at trial." *Id*. at 85. Despite the district court's unchallenged finding that these services were "essential to presentation of the case," *id.*, the Court concluded that "a reasonable attorney's fee" does not "embrac[e] fees for experts' services," *id*. at 97 (internal quotation marks omitted).

Most recently, in *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291 (2006), the Court for the first time examined IDEA's attorneys' fees provision. Although the language of that provision is "virtually identical" to section 1988, the statute at issue in both *Jenkins* and *Casey*, the Court explained that analysis of IDEA's fee-shifting provision must take account of the fact that unlike section 1988, which Congress passed as an exercise of its Fourteenth

Amendment enforcement authority, Congress enacted IDEA pursuant to the Spending Clause. *Id*. at 302, 295. "[L]egislation enacted pursuant to the spending power," the Court explained, "is much in the nature of a contract" whereby "in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 17 (1981). As the Court recognized, "[t]he legitimacy of Congress' power to legislate under the spending power thus rests on whether the State *voluntarily and knowingly* accepts the terms of the 'contract.'" *Id*. (emphasis added). Accordingly, given that IDEA conditions federal funding "upon a State's compliance with extensive goals and procedures," the Court explained, we must examine the propriety of requested attorneys' fees "from the perspective of a state official who is engaged in the process of deciding whether the State should accept IDEA funds and the obligations that go with those funds." *Murphy*, 548 U.S. at 295–96 (internal quotation marks and citations omitted). In this sense, the Court's analysis in *Murphy* differed significantly from that in *Jenkins* and *Casey*. *Jenkins* and *Casey* presented the question whether in enacting section 1988, Congress had intended to include paralegals (*Jenkins*) or expert witnesses (*Casey*) within the phrase "reasonable attorney's fee as part of the costs." The question in *Murphy* was not only one of congressional intent, but also whether state officials deciding whether to accept IDEA funds "would clearly understand that one of the obligations of the Act is the obligation to compensate prevailing parents for expert fees." *Id.*

In *Murphy*, the parents had, without ever retaining an attorney, hired their own expert to assist in preparing their case and sought recovery for those fees. Rejecting the parents' argument that they could recover the expert's fees as "reasonable attorneys' fees as part of the of costs," the Court explained that nothing in IDEA "even hint[s] that acceptance

of IDEA funds makes a State responsible for reimbursing prevailing parents for services rendered by experts." *Id*. at 297.

In this case, plaintiffs argue that *Murphy* is irrelevant because "Millis was not an independent consultant" or expert. Pls.' Br. 7. Instead, plaintiffs contend, Millis's work is compensable under *Jenkins* because her "professional role . . . perfectly meets the ABA definition of a paralegal/legal assistant" as "a person, qualified by education, training or work experience who is employed or retained by a lawyer . . . who performs specifically delegated substantive *legal* work for which a lawyer is responsible." Pls.' Br. 7 (emphasis added).

To be sure, paralegal costs may be recoverable under IDEA. After all, given that the Court announced its holding in *Jenkins*—that section 1988 "clearly" authorizes recovery of fees for paralegals—*before* Congress enacted IDEA, and given that IDEA uses the same language as section 1988, public officials signing up for IDEA funds were on notice that prevailing plaintiffs could recover paralegal costs. But we need not definitively resolve that question because even if the ABA standard is the controlling definition of "paralegal," plaintiffs have failed to show that the district court abused its discretion in concluding that Sharon Millis did not perform "substantive *legal* work." Pls.' Br. 7 (emphasis added); *see also Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 970, 974 (D.C. Cir. 2004) (plaintiffs seeking attorneys' fees have "the burden of establishing the reasonableness of [their] fee request" and producing supporting documentation containing "adequate detail [to] show that [an attorney's] employees performed suitable tasks.").

To begin with, in her own résumé, Millis describes herself as an "Independent Special Education Advocate/Expert for Special Education Attorneys/Courts/Parents," and lists "core competencies" in, among other things, expert testimony

regarding special education, special education curriculum development, and analysis of therapeutic models for special needs students. Nowhere does the résumé say anything about legal training or paralegal experience.

The affidavit submitted by firm founder Douglas Tyrka is consistent with Millis's résumé. Although Tyrka describes every other firm employee as "a fully trained paralegal" trained by "paralegals and attorneys of the firm," he calls Millis a special education professional with forty years of experience. Douglas Tyrka Aff. ¶¶ 5–9, July 23, 2013. To be sure, the affidavit also says that Millis "performed all of her work under the supervision of the firm's attorneys" and that she "trained [Tyrka] in the practice of special education law in the District of Columbia." *Id.* ¶ 6. But neither of these statements demonstrates that Millis *herself* actually engaged in the kind of substantive legal work normally undertaken by paralegals.

Equally significant, the billing records reflect a dramatic difference between Millis's work and that of the "fully trained paralegals." The paralegals all engaged in traditional paralegal activities, *e.g.*, making phone calls, maintaining files, and preparing correspondence, whereas Millis's work involved substantive special education tasks, *e.g.*, reviewing neuropsychological and auditory processing reports, participating in multidisciplinary team meetings, and testifying at due process hearings. Tyrka & Associates Billing Records 1–73.

All of this—Millis's résumé, Tyrka's affidavit, and the billing records—demonstrates that the district court did not abuse its discretion in concluding that Millis is what she says she is: a highly experienced special education consultant and expert.

At oral argument, plaintiffs' counsel insisted that the cost of Millis's work is nonetheless recoverable under *Jenkins*

because in the field of special education highly specialized paralegals perform precisely the kind of substantive tasks undertaken by Millis—work that would otherwise be performed by attorneys. But "[b]ecause this argument was raised for the first time at oral argument, it is forfeited." *United States v. Southerland*, 486 F.3d 1355, 1360 (D.C. Cir. 2007). In any event, nothing in the record supports Tyrka's contention that Millis's work is the type of work that paralegals now perform in the field of special education. And especially important in light of *Murphy*, plaintiffs have provided no evidence that public officials signing up for IDEA funds "would clearly understand that one of the obligations of the Act is the obligation to compensate prevailing parents" for "paralegals" like Millis. *Murphy*, 548 U.S. at 296.

Plaintiffs next contend that even if Millis performed as an expert instead of a paralegal, *Murphy* still does not bar recovery for two separate reasons. First, according to plaintiffs, *Murphy* dealt only with the question whether the "cost of an independent, non-lawyer consultant was . . . reimbursable as a litigation 'cost,'" and thus "has very little to do" with a case such as this where a lawyer retained Millis and billed her time as part of attorneys' fees. Pls.' Br. 7. Essentially, plaintiffs argue that *Murphy* deals only with costs, and that because IDEA mentions both costs *and* attorneys' fees, the decision has no applicability where, as here, plaintiffs seek to recover the cost of an expert as part of attorneys' fees. In *Murphy*, however, the Supreme Court expressly rejected this argument, holding that IDEA "does not say that a court may award 'costs' to prevailing parents; rather, it says that a court may award reasonable attorneys' fees '*as part of the costs*.'" *Murphy*, 548 U.S. at 297 (emphasis added). "This language," the Court observed, "simply adds reasonable attorney's fees to the list of costs that prevailing parents are otherwise entitled to recover." *Id.* And having rejected the argument in *Casey* that an award of "a reasonable attorney's fee as part of the costs" includes

expert fees, the Court in *Murphy* concluded that it could not "hold that the relevant language in the IDEA *unambiguously means* exactly the opposite of what the nearly identical language . . . was held to mean in *Casey*." *Id.* at 302. Read together, *Murphy* and *Casey* thus foreclose recovery of expert fees entirely.

Second, plaintiffs argue that Millis's work is compensable because "[u]nlike the *Murphy* plaintiffs, [they] did not retain Ms. Millis separately," but instead she "was employed by [a law firm], where she worked directly under lawyer supervision." Pls.' Br. 7. Again, plaintiffs ignore what *Murphy* requires: Whether independently employed by plaintiffs (*Murphy*) or hired by a law firm (this case), plaintiffs must demonstrate that "IDEA gives [states] unambiguous notice regarding liability for expert fees." *Murphy*, 548 U.S. at 301. Neither in the district court nor here have plaintiffs even attempted to satisfy that requirement.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*