# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 18-60500

————

TEXAS EDUCATION AGENCY,

United States Court of Appeals
Fifth Circuit

**FILED**

November 7, 2018

Lyle W. Cayce
Clerk

Petitioner,

versus

UNITED STATES DEPARTMENT OF EDUCATION,

Respondent.

————————

Petition for Review of a Final Order
of the Secretary of Education

————————

Before HIGGINBOTHAM, SMITH, and GRAVES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Under the Individuals with Disabilities Education Act ("IDEA"), a state may receive federal funding for special education, provided it complies with statutory requirements. One such condition—known as the "maintenance of state financial support" ("MFS") clause—prohibits a state from reducing the amount of state financial support made available for special education and related services below the amount for the previous fiscal year. *See* 20 U.S.C. § 1412(a)(18)(A). If the state reduces the amount of its financial support, the

No. 18-60500

Secretary of Education may withhold federal funding by a corresponding amount. *See id.* § 1412(a)(18)(B).

In fiscal year 2012, Texas made available roughly $33.3 million less for special education and related services than it did during fiscal year 2011. Accordingly, the Department of Education issued a proposed determination that Texas was ineligible for $33.3 million of future grants because of the short-fall in both aggregate and per capita state funding. The state asserted that it had complied with the MFS requirement because funding under a weighted-student model had remained constant. Texas further maintained that the MFS provision violated the Constitution's Spending Clause in that it failed to provide clear notice that a state could not decrease its aggregate or per capita appropriations. The Secretary ultimately rejected both arguments. Because the weighted-student model contravenes the plain meaning of the MFS clause, we deny the state's petition for review.

I.

Part B of the IDEA, *id.* § 1400 *et seq.*, authorizes the Secretary to extend federal grants to assist states in providing special education and related services for children with disabilities. "Congress enacted IDEA in 1970 to ensure that 'all children with disabilities are provided a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of [such] children and their parents or guardians are protected.'"[1]

To qualify for these grants, a state must submit a "plan that provides assurances to the Secretary that the State has in effect policies and procedures

---

[1] *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009) (citations omitted). *See also* 20 U.S.C. § 1400(d).

to ensure that the State meets each" of the twenty-five stipulated conditions. *Id.* § 1412(a). Among these is the MFS clause, which Congress added in the 1997 Amendments.[2] The MFS requirement forbids a state from "reduc[ing] the amount of State financial support for special education and related services for children with disabilities, or otherwise made available because of the excess costs of educating those children, below the amount of that support for the preceding fiscal year." *Id.* § 1412(a)(18)(A). *See also* 34 C.F.R. § 300.163. If a state does not comply, then the Secretary "shall reduce the allocation of funds" to the state "by the same amount by which the State fails to meet the requirement." 20 U.S.C. § 1412(a)(18)(B). Alternatively, the Secretary may waive the MFS condition if she finds that a state provided clear and convincing evidence that all children with disabilities have available to them a free appropriate public education. *See id.* § 1412(a)(18)(C)(ii); *see also* 34 C.F.R. § 300.164.

In its 2013 application for IDEA Part B funds, Texas reported a shortfall of $377,284,114 between the state funding appropriated for special education in fiscal years 2012 and 2011. Texas noted that the reduction had resulted from decreases in enrollment and in the level of services required by individual children with disabilities. The Department warned Texas that it was at risk of having its funds reduced the following fiscal year and informed Texas it could satisfy the MFS requirement by showing that the total amount of state funding was no less than that of the previous fiscal year (aggregate method) or that the funding per individual child was at least equal to the previous fiscal year's (per capita method). Applying the per capita method, the Department determined that Texas's shortfall was only $33,302,428. The Department notified Texas of the opportunity to seek a waiver of the MFS provision, but

---

[2] *See* Individuals with Disabilities Education Act Amendments for 1997, Pub. L. No. 105-17, § 101, 111 Stat. 37, 68 (1997).

the state did not do so.  Consequently, the Department issued a proposed determination that Texas was ineligible for the corresponding $33.3 million in future grants.

In response, Texas maintained that it had fully complied with the MFS clause through its faithful application of the weighted-student model.  Under that approach, an "individualized education program" team assesses the special education needs of each student with a disability.  Funds are then allocated according to the number of hours and the types of special education services received by a full-time equivalent student in average daily attendance.  The amount of state funding can therefore fluctuate yearly depending on the number of enrolled students and their unique instructional arrangements.  For instance, if a student requires daily tutoring sessions in one year but only biweekly sessions in another, his school would receive less funding to account for the change in special education needs.

The weighted-student model has existed in its current form since 1995.  Because Texas did not alter its core statutory mechanism for funding special education in 2012, the state asserted that it had not reduced the funds made available for disabled children.  According to Texas, what had changed in 2012 was not the support for special education, but rather the special education needs of children with disabilities.  Finally, Texas posited that the MFS requirement exceeded Congress's spending power by failing to provide clear notice that reductions in aggregate and per capita funding were forbidden.

On May 23, 2018, the administrative law judge ("ALJ") determined that the weighted-student model contradicted the plain language of the MFS provision, which required states to maintain the same level of allocations from year to year.  The ALJ further rejected Texas's argument under the Spending Clause, finding that the MFS condition was clear and unambiguous.  The

No. 18-60500

Secretary did not review the ALJ's ruling, which therefore became the final decision of the Secretary on July 9, 2018.  Texas filed a petition for review.

## II.

This court reviews an agency's final determination under the standards in the Administrative Procedure Act.[3]  The court will set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2).

Texas maintains that the weighted-student method complies with the MFS requirement, given the statutory language, context, and purposes of the IDEA.  We disagree.

## A.

"[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed . . . ."  *Caminetti v. United States*, 242 U.S. 470, 485 (1917) (citations omitted).  We give undefined words "their ordinary, contemporary, common meaning,"[4] presuming "that the legislature says in a statute what it means and means in a statute what it says there."[5]  The judicial inquiry thus "begins with the statutory text, and ends there as well if the text is unambiguous."  *BedRoc*, 541 U.S. at 183 (citations omitted).

The MFS clause provides that a state must "not reduce the *amount* of State *financial* support . . . made available" for special education and related

---

[3] *ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 571 (5th Cir. 2017) (citing 5 U.S.C. § 706).

[4] *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 269 (5th Cir. 2015) (citations omitted).

[5] *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (citation and alteration omitted).

services for children with disabilities.  20 U.S.C. § 1412(a)(18)(A) (emphasis added).  But under the weighted-student model, Texas may reduce the amount of funding for special education if it determines that the needs of children with disabilities have changed.  Indeed, Texas does not dispute that it reduced the amount of state funding by $33.3 million between fiscal years 2012 and 2011.  In doing so, Texas violated the plain requirements of the MFS clause and is thus ineligible for the corresponding amount of future IDEA Part B grants.

Texas responds by noting that the statute does not define the operative terms "reduce," "support," or "made available."  Resorting to the dictionary, Texas observes that the common meaning of "support" is "to pay the costs of: maintain."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 2297 (1986).  To "maintain," in turn, is "to keep in a state of repair, efficiency, or validity."  *Id.* at 1362.  The state thus asserts that the word "support" has a broader meaning than mere "spending" or "financing."  Therefore, Texas claims that the statute permits reductions in the absolute amount of state funding, so long as the state maintains the same level of support for the changing needs of disabled students.

But Texas overlooks that the adjective "financial" modifies "support," thereby limiting the scope of that term.  20 U.S.C. § 1412(a)(18)(A).  The MFS requirement therefore focuses narrowly on the amount of funding made available for special education.  Accordingly, the statute makes clear that states must maintain the same level of funding, irrespective of any fluctuations in the actual needs of children with disabilities.

Texas next posits that the phrase "made available" refers to something that is capable of being used, not actually used.[6]  As a result, Texas asserts

---

[6] *See* WEBSTER'S, *supra*, at 150 (defining "available" as "capable of use for the

No. 18-60500

that money can be made available for special education and related services even if it is not ultimately claimed or spent on such services. The state urges that it complied with the MFS requirement because its statutory algorithm for funding special education has remained unaltered since 1995. And under Texas law, the state cannot refuse to provide local schools with the funding that the weighted-student model guarantees. Hence, Texas claims that even though the amount of state funds spent in 2012 may have dropped, the amount "made available" under the weighted-student model did not.

Admittedly, the phrase "made available" does not require that funds actually be expended. But at a minimum, a state must appropriate funds to make them available. Without a suitable appropriation, funding is not capable of immediate use. Because Texas appropriated about $33.3 million less in 2012 than in 2011, the state can hardly be said to have made those funds available in any practical way.

Lastly, Texas accuses the Secretary of adding words to the statute by measuring compliance with the MFS provision only on an aggregate or per capita basis. Under the aggregate method, a state may not reduce the total amount of funding made available from year to year. Conversely, the per capita method requires a state to maintain at least the same amount of funding per child with a disability that it made available during the previous year. According to Texas, nothing in the text of the IDEA supports the Secretary's decision to permit the aggregate and per capita methods but not the weighted-student model. Though the statute prohibits states from reducing the amount of financial support, it does not explicitly define how to calculate that reduction. It neither uses the term "aggregate" nor "per capita." Thus, Texas

---

accomplishment of a purpose: immediately "utilizable").

No. 18-60500

claims that the Department has impermissibly "add[ed] terms or provisions where [C]ongress has omitted them." *See Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 168 n.16 (1993) (citations omitted).

Yet as we have already observed, the statutory text instructs a state not to reduce the "*amount* of State financial support." 20 U.S.C. § 1412(a)(18)(A) (emphasis added). Hence, the relevant inquiry is not whether a state has adequately provided for the special needs of disabled children, but whether it has maintained the same *amount* of monetary aid. Both the aggregate and per capita methods correctly concentrate on the level of state funding made available from year to year. In contrast, the weighted-student model allows a state to reduce the amount of funding based on the changing needs of children with disabilities. It therefore contradicts the ordinary meaning of the text.

## B.

A statute must be read in "the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (citations omitted). Accordingly, we must interpret the MFS provision alongside the statutory standards for waiving that condition. Because the weighted-student model renders the waiver process superfluous, it does not comply with the clear requirements of the MFS clause.

As a "cardinal principle of statutory construction," the presumption against superfluity requires the court to "give effect, if possible, to every clause and word of a statute . . . rather than to emasculate an entire section." *Bennett v. Spear*, 520 U.S. 154, 173 (1997) (citation omitted). Yet the weighted-student model violates that canon, rendering superfluous the carefully-wrought waiver process established by Congress. Under the IDEA, the Secretary may waive the MFS requirement for one fiscal year at a time if she finds that a state has provided clear and convincing evidence that all children with disabilities have

No. 18-60500

available to them a free appropriate public education.[7]

The weighted-student model circumvents the waiver process by allowing a state to reduce its amount of financial support whenever the state—rather than the Secretary—determines that the special education needs of children with disabilities are adequately funded.  Indeed, Texas claims to have funded special education according to the diverse instructional arrangements that its students need to succeed.  But the state admits that those needs are determined by an "individualized education program" team.  Conversely, the IDEA entrusts that discretion to the Secretary, permitting a waiver only if she concludes that all disabled children enjoy a free appropriate public education.  *See* 20 U.S.C. § 1412(a)(18)(C)(ii).  Thus, the weighted-student model undermines the waiver process by enabling a state to decide, on its own initiative, that it sufficiently funded the needs of children with disabilities.

Additionally, under Texas's view, a state may reduce the amount of its funding, so long as it "provides assurances" that "[a] free appropriate public education is available to all children with disabilities."  20 U.S.C. § 1412(a), 1412(a)(1)(A).[8]  But that interpretation would dramatically reduce the burden of proof that a state must ordinarily shoulder to receive a waiver.  After all, the IDEA requires a state to "provide[] clear and convincing evidence that all

---

[7] To grant a waiver, the Secretary must "determine[] that . . . the State meets the standard in paragraph (17)(C) for a waiver of the requirement to supplement, and not to supplant, funds received under this subchapter."  20 U.S.C. § 1412(a)(18)(C)(ii).  Paragraph (17)(C), in turn, permits a waiver "where the State provides clear and convincing evidence that all children with disabilities have available to them a free appropriate public education . . . ."  *Id.* § 1412(a)(17)(C).

[8] Texas suggests that conclusion throughout its briefs.  *See, e.g.,* Pet'r Br. at 26 ("[T]he record does not indicate that Texas students designated for special education do not receive a free appropriate public education."); Pet'r Reply Br. at 1 ("[T]he Department's brief never suggests that children in Texas do not receive a free appropriate public education—and nothing in the record would support such a proposition.").

No. 18-60500

children have available to them a free appropriate public education" to qualify for a waiver. *Id.* § 1412(a)(17)(C). Because the weighted-student model would thus "emasculate" the stringent waiver process, it flouts the presumption against superfluity. *See Bennett*, 520 U.S. at 173.

The state yet asserts that the statutory context supports the weighted-student model. Noting that the MFS condition appears beside the phrase "for children with disabilities," Texas insists that Congress intended the requirement to be read in the context of the needs of individual children, not program-wide budgets. Texas urges that, whereas the aggregate and per capita methods measure compliance via statewide metrics, the weighted-student model properly assesses whether children with disabilities receive the funding they require.

That theory might make sense, as a policy matter, if we were legislators. But the plain language of the statute mandates that the "*State* . . . not reduce the amount of *State* financial support." 20 U.S.C. § 1412(a)(18)(A) (emphasis added). As a result, the MFS condition may just as plausibly be read to focus on statewide funding, rather than on the individual needs of students. Moreover, the phrase "for children with disabilities" does not mandate on its face an individualized approach to funding special education. Instead, Texas appears to commit the same blunder that it attributes to the government. In contending that the MFS requirement looks to the *individual* needs of children with disabilities, Texas has itself added words to the statute.

The state further maintains that the aggregate and per capita methods effectively write "for children with disabilities" out of the statute, treating the phrase as mere surplusage. Texas claims that if Congress intended to mandate those methods, then it need only have said, "The State does not reduce the amount of State financial support for special education and related services."

10

No. 18-60500

According to Texas, the phrase "for children with disabilities" therefore does no work under the Secretary's interpretation.

That claim also lacks merit. Congress included the phrase to clarify that "State financial support for special education and related services" must be made available "for children with disabilities"—rather than for other demographic groups. *Id.* Even under the Secretary's reading, the phrase thus retains independent meaning. Consequently, the weighted-student model accords with neither the language nor the context of the MFS clause.

## C.

Where the meaning of a statute is plain, the court has no occasion to consider its underlying purposes.[9] Instead, "the sole function of the courts is to enforce [the provision] according to its terms." *Caminetti*, 242 U.S. at 485 (citations omitted). Because the weighted-student model violates the plain meaning, we need not consider the legislative history. Nevertheless, the legislative history of the statute only confirms the Secretary's interpretation.

In drafting the MFS clause, Congress sought to prevent a state from reducing its contributions to special education and shifting the financial burden of such services to the federal government.[10] There is no indication that Texas actually defunded special education in 2012, but the weighted-student model certainly poses the potential for future abuse. Though Texas law requires the state to allocate funding based on the needs of disabled children,

---

[9] *See BedRoc*, 541 U.S. at 183; *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 132 (2002) ("[R]eference to legislative history is inappropriate when the statute is unambiguous.") (citation omitted).

[10] *See* 143 Cong. Rec. S4295, S4300 (daily ed. May 12, 1997) (statement of Senator Harkin) (noting that the MFS provision was meant "to ensure that increases in Federal appropriations are not offset by State decreases"); *id.* at S4304 (statement of Senator Jeffords) (explaining that the MFS provision "say[s] to the States that, if we give them more money, they can't just reduce their share").

11

No. 18-60500

it is the state itself that assesses what those needs are. Hence, the weighted-student model creates a perverse incentive for a state to escape its financial obligations merely by minimizing the special education needs of its students.

Texas counters that one of the stated purposes of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d). According to Texas, the weighted-student model comports fully with that purpose by providing the necessary funding to address the "unique needs" of students with disabilities.

This argument is unpersuasive. As we discussed above, the IDEA has an exception to the MFS clause where a state can show, by clear and convincing evidence, that it has adequately met the "unique needs" of students with disabilities by providing all students with disabilities with a free appropriate public education—that portion of the statute is the waiver provision. *See* 20 U.S.C. § 1412(17)(C). The statute is internally consistent; Texas's interpretation of it is not. Because the weighted-student model plainly contradicts the text of the MFS clause, the state may not invoke the broad purposes of the IDEA to create ambiguity where none exists.

### III.

Finally, we consider whether the MFS clause exceeds Congress's spending power by failing to provide sufficiently clear notice of its requirements. Under the Spending Clause,[11] Congress may "condition[] receipt of federal moneys upon compliance by the recipient with federal statutory and

---

[11] *See* U.S. CONST. art. I, § 8, cl. 1.

administrative directives."[12] Given that such legislation is "much in the nature of a contract," the legitimacy of Congress's power so to enact "rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (citations omitted). Yet "[s]tates cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.'" *Arlington Cent. Sch. Dist. Bd. of Educ.*, 548 U.S. 291, 296 (2006) (citing *Pennhurst*, 451 U.S. at 17). Plainly put, "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst*, 451 U.S. at 17 (citations omitted).

When evaluating whether the IDEA provides unambiguous notice of its conditions, the Court "view[s] the IDEA from the perspective of a state official who is engaged in the process of deciding whether the State should accept IDEA funds and the obligations that go with those funds." *Arlington Cent.*, 548 U.S. at 296. The Court then "ask[s] whether such a state official would clearly understand" the IDEA's requirements. *Id.*

Texas posits that the MFS clause fails to provide clear notice that it forbids aggregate and per capita reductions in funding even when weighted-student support remains constant. But as already discussed, the weighted-student model contravenes the plain meaning of the MFS provision by allowing a state to reduce its special education funding based on its unsupported claim that the needs of its disabled students have declined. Texas therefore had clear notice that its interpretation was incompatible with the MFS requirement.

The petition for review of the final order of the Secretary is DENIED.[13]

---

[12] *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (citations omitted).

[13] At oral argument, Texas requested a prompt ruling, so that it may adequately prepare its budgetary request for the 2019 Texas Legislature. For that reason, we direct that the mandate issue forthwith.